**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**


**CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.**


| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : No. 25 WAP 2012 |
| | : |
| Appellant | : Appeal from the Order of the Superior |
| | : Court entered November 9, 2011 at No. |
| | : 1948 WDA 2007, reversing and vacating |
| v. | : the Judgment of Sentence of the Court of |
| | : Common Pleas of Allegheny County |
| | : entered March 15, 2007 at CP-02-CR- |
| MICHAEL MOLINA, | : 0007403-2004 and CP-02-CR-0009547- |
| | : 2004 and remanding. |
| Appellee | : |
| | : ARGUED:  September 10, 2013 |


## OPINION ANNOUNCING THE JUDGMENT OF THE COURT


**MR. JUSTICE BAER**                    **DECIDED:  NOVEMBER 20, 2014**

We granted review in this case to consider whether a defendant's right against self-incrimination, as protected by the federal and Pennsylvania constitutions, is violated when the prosecution utilizes a non-testifying defendant's pre-arrest silence as substantive evidence of guilt.  After reviewing this issue of first impression, to which the United States Supreme Court has not definitively spoken, we agree with the Superior Court, as well as several of our sister courts, that the use of pre-arrest silence as substantive evidence of guilt violates a non-testifying defendant's constitutional rights. As discussed below, we would affirm the order of the Superior Court remanding for a new trial.  However, given that the status of federal jurisprudence is uncertain, we base our holding upon the right against self-incrimination set forth in Article I, Section 9 of the Pennsylvania Constitution.

In this case, a jury convicted Michael Molina (Defendant) of third degree murder and related crimes resulting from the savage beating of Melissa Snodgrass (Victim), apparently as a result of drug debts owed by Victim to Defendant. On September 7, 2003, Victim told her mother, with whom she lived, that she was leaving the house to run some errands. When she did not return, Victim's mother reported her disappearance to the Missing Persons Unit of the Pittsburgh Police Department. Six months later, her decomposed remains were found under moldy clothing and other debris in the basement of a house in the Spring Garden section of Pittsburgh in which Michael Benintend, one of the prosecution's primary witnesses, resided during the relevant time period.

The issue presented to this Court requires consideration of the Missing Persons Unit detective's testimony and the prosecutor's closing arguments regarding the early days of the investigation into Victim's disappearance. Following a lead that Defendant was holding Victim against her will, the Missing Persons Unit detective assigned to the case went to Defendant's house two days after Victim's disappearance. Pamela Deloe, a second primary prosecution witness, answered the door and asserted that neither Victim nor Defendant were at the house. Accordingly, the detective left her card and asked that Defendant call her. Later that day, Defendant called the detective.

The detective testified regarding the phone call from Defendant:

> I asked him -- well, before I could even ask him if he was aware of [Victim] being missing, he stated to me that there were -- that he didn't know where she was. It was out on the street that someone said that he was involved in her being missing and it wasn't him.

Notes of Testimony ("N.T."), Dec. 14-20, 2006, at 480. The detective then inquired as to when Defendant had last seen Victim. He initially responded that he had not seen

her for a year and a half, but then he immediately contradicted his statement, claiming instead that he had not seen her for three months. Subsequent to this contradiction, the detective testified that she asked him to come to the police station to speak to her and he refused:

> A. Yes. After he stated that, I asked him if he could come into our office and sit down and talk with me about the case, and he refused. He said he refused to come in.
>
> Q. So this contact that you had with him was over the telephone. Is that what you're saying?
>
> A. Yes, it was over the telephone.

Id. at 481.[1] Defense counsel did not object to the reference to Defendant's refusal to come into the office. In due course, the prosecution concluded its questioning of the detective, and defense counsel did not pursue that issue in his cross-examination. Id. at 482-85.

During closing argument, the prosecutor accentuated Defendant's refusal to go to the police station, and when defense counsel objected, the prosecutor stated before the jury that it was not improper to comment on Defendant's pre-arrest silence:

> [Prosecutor:] Look also at what happened in terms of the police investigation in this matter. Three days after this young lady goes missing, three days after she goes missing, detectives are already knocking on the defendant's door because of something they heard, maybe he was holding this person against their [sic] will, and he calls the police back and is very defensive. I mean, before a question's even asked, he denies any knowledge or any involvement with this young lady. He makes contradictory statements to

---

[1] We observe that the detective was not questioned as to exactly how the refusal was phrased or whether it implied an assertion of Defendant's rights against self-incrimination.

the police about when's the last time that he saw her.  First he says, "I saw her a year and a half ago."  Then he says, "I saw her three months ago."  But most telling, I think, is the fact that the officer invited him.  "Well, come on down and talk to us.  We want to ask you some more questions about this incident, your knowledge of this young lady," especially because he made these contradictory statements. And what happens? Nothing happens.  He refuses to cooperate with the Missing Persons detectives.  And why?

[Defense Counsel]: Your Honor, I have to object to that.  That's improper comment, absolutely improper.

[Prosecutor]: Your Honor, pre-arrest silence is not improper comment at all.

Id. at 579-80.

In a brief sidebar discussion, defense counsel requested that the jury be instructed to disregard the statement, which the defense viewed as "absolutely improper;"  "If somebody wants to assert their right not to cooperate and talk to the police, that cannot be commented upon."  Id. at 580.  Notably, defense counsel did not seek a mistrial at this juncture.  The prosecution responded "there's a sharp line drawn between pre-arrest silence and post-arrest silence."  Id. at 581.  The court allowed the prosecution to proceed without issuing any instructions.  Id.  The prosecutor further emphasized the silence following the sidebar, stating, "Factor that in when you're making an important decision in this case as well."  Id.

The jury found Defendant not guilty of first-degree murder but convicted him of third-degree murder and unlawful restraint based substantially on the eyewitness testimony of Benintend and Deloe, who claimed to have witnessed Defendant brutally beat Victim to death.[2]  The trial court sentenced him to twenty to forty years of

---

[2]  The details of their testimony are not relevant to the primary issue before this Court, but will be discussed in conjunction with the harmless error analysis, infra at 39.

imprisonment.[3] Defendant appealed the judgment of sentence, raising four issues in his Pa.R.A.P. 1925(b) concise statement of issues presented on appeal, including the claim currently before this Court: whether the trial court erred in not sustaining the objection to the prosecution's reference to Defendant's pre-arrest silence and in not declaring a mistrial.

In its Pa.R.A.P. 1925(a) opinion, the trial court considered precedent from this Court and the United States Supreme Court regarding the right against self-incrimination, which will be discussed in detail below, and highlighted the distinction between pre- and post-arrest silence.  After reviewing this precedent, the trial court briefly addressed whether it erred in allowing the prosecutor's statements during closing arguments and also considered whether it should have granted a mistrial sua sponte, because of the statements.  The court opined that the prosecutor "did nothing more than talk about the police investigation and provide information to the jury which would allow them to assess the credibility of [Defendant's] 'testimony.'"  Tr. Ct. Op. at 30.  The court used the term "[Defendant's] 'testimony'" to describe the detective's summary of her phone call with Defendant, as Defendant did not take the witness stand in his own defense during trial.  The trial court also concluded that it did not err in not granting a mistrial sua sponte, concluding that the detective's testimony did not prejudice Defendant.  The court attempted to distinguish the facts of this case from those in which Fifth Amendment protection has been granted, observing that when Defendant spoke to

---

[3]     The trial court granted the defense motion for acquittal on the charge of criminal conspiracy to commit criminal homicide.  On the same date, the court sentenced Defendant to four to eight years of imprisonment for aggravated assault, simple assault, and unlawful restraint for conduct related to witness Pam Deloe to which Defendant had pled guilty.

the detective "the police were unsure if any crime had been committed for which [Defendant] could have been charged." Tr. Ct. Op. at 31.

Defendant appealed to the Superior Court challenging the use of his pre-arrest silence as substantive evidence of guilt. A three-judge panel initially heard the appeal and reversed Defendant's conviction. Upon the Commonwealth's motion, the court granted reargument en banc, and again reversed the trial court, concluding that Defendant's state and federal rights against self-incrimination were violated when the Commonwealth "urge[d] the jury to use a non-testifying defendant's pre-arrest, pre-Miranda[4] silence as substantive evidence of his guilt." Commonwealth v. Molina, 33 A.3d 51, 53 (Pa. Super. 2011) (footnote omitted).

The Superior Court recognized that Defendant's argument was limited to claiming that the prosecutor's closing argument violated his right against self-incrimination and did not contend that the detective's testimony itself was improper.[5] It noted that the detective's testimony merely provided an account of the extent of the police investigation of Victim's disappearance as it related to Defendant and was not used to imply an admission of guilt at the time of the testimony. In contrast, the court opined that the prosecutor used the testimony in closing as substantive evidence of Defendant's guilt. Id. at 56, 61.

Prior to determining whether this use violated Defendant's rights, the Superior Court conducted a thorough review of the caselaw relating to the right against self-incrimination. The court identified four distinct time periods during which a defendant

---

[4]  Miranda v. Arizona, 384 U.S. 436 (1966).

[5]  The Superior Court also rejected the Commonwealth's waiver argument stemming from counsel's failure to object to the detective's testimony. Although the Commonwealth addresses this issue in a footnote, our grant of review does not extend to that question.

"may either volunteer a statement or remain silent: (1) before arrest; (2) after arrest but before the warnings required by Miranda have been given; (3) after Miranda warnings have been given; and (4) at trial," which the court considered in reverse order. Id. at 57.

The court recognized that defendants have an "absolute right to remain silent and to not present evidence" at trial and that prosecutors cannot comment on a defendant's refusal to testify.[6] Id.; see generally Griffin v. California, 380 U.S. 609, 615 (1965). Turning to post-Miranda, pre-trial silence, the court acknowledged that this Court and the High Court have held that the prosecution cannot reference a defendant's pre-trial silence following the reading of Miranda warnings, even when the defendant chooses to testify. Molina, 33 A.3d at 58 (citing Doyle v. Ohio, 426 U.S. 610, 618 (1976)).

In considering the time period between arrest and the provision of Miranda warnings, the Superior Court found the caselaw to be more muddled than the first two time frames. It recognized that the United States Supreme Court in Fletcher v. Weir, 455 U.S. 603 (1982), found no violation of a defendant's right against self-incrimination when the prosecution used a defendant's post-arrest, pre-Miranda warning silence to impeach a defendant's testimony at trial, but observed that the High Court has not considered whether such silence can be used as substantive evidence of guilt when the defendant does not testify. Moreover, the Superior Court observed that this Court in Commonwealth v. Turner, 454 A.2d 537, 540 (Pa. 1982), concluded that the Pennsylvania Constitution protected a defendant's silence during the post-arrest, pre-

---

[6] While the Superior Court's holdings were based primarily on the Fifth Amendment to the United States Constitution, we recognize that the Fifth Amendment provides the minimum level of protection of individual rights. Commonwealth v. Edmunds, 586 A.2d 887, 894 (Pa. 1991). As noted, our holding today is based on the Pennsylvania Constitution.

Miranda period, even precluding the use of a defendant's silence to impeach his trial testimony, and opined that the right against self-incrimination preexists Miranda warnings.

Turning to the pre-arrest period relevant to the case at bar, the Superior Court acknowledged that the United States Supreme Court found in Jenkins v. Anderson, 447 U.S. 231 (1980), that the prosecution did not violate a defendant's due process rights or the right against self-incrimination when it referenced the defendant's pre-arrest silence while impeaching the defendant's testimony at trial. The court further noted that this Court relied upon Jenkins in Commonwealth v. Bolus, 680 A.2d 839 (Pa. 1996), when it likewise held that impeachment of a defendant's testimony with reference to pre-arrest silence does not violate a defendant's right against self-incrimination under the Pennsylvania Constitution, but did not speak to whether the silence could be used as substantive evidence of guilt if the defendant did not testify. Moreover, the court recognized that in Commonwealth v. DiNicola, 866 A.2d 329 (Pa. 2005), we held that the prosecution could use a defendant's pre-arrest silence not only to impeach a defendant's testimony but as fair response to defense arguments.

The Superior Court acknowledged that none of the above-referenced cases addressed a defendant's pre-arrest silence where the defendant had neither waived his right to self-incrimination by testifying nor opened the door to the Commonwealth's use of his silence as a fair response to defense arguments. Additionally, the court observed that the federal circuit courts and state courts are divided upon this issue. Molina, 33 A.3d at 62 (collecting cases). The Superior Court concluded that Pennsylvania should align itself with those jurisdictions which have held that the use of a non-testifying defendant's pre-arrest silence as substantive evidence of guilt violates the defendant's right against self-incrimination. The Superior Court opined, "If the prosecution were

allowed to suggest guilt at trial from a defendant's silence during the pre-arrest stage, silence would essentially equate to an admission of guilt." Id. at 64.

Accordingly, the Superior Court held that, while the detective's testimony, in and of itself, did not violate the right against self-incrimination, the right was violated when the prosecutor utilized Defendant's refusal to speak further with the detective as substantive evidence of his guilt in his closing argument. The court further concluded that the trial court's error was not harmless. Rather than constituting the overwhelming evidence necessary to meet the Commonwealth's burden of proving harmless error, the Superior Court found the Commonwealth's case to be based upon the testimony of Benintend and Deloe, both of whose credibility was significantly challenged at trial. Accordingly, the Superior Court reversed the convictions and vacated the judgment of sentence.

Then-President Judge, now-Justice Stevens dissented, concluding that Defendant did not have a protected interest in remaining silent pre-arrest and, even if he did, the Commonwealth did not use his silence as substantive evidence of guilt in this case. The dissent emphasized that neither this Court nor the United States Supreme Court has found a "protected, constitutional interest in one's decision to remain silent in the pre-arrest, pre-Miranda setting" or "to remain silent in all of one's interactions with police." Id. at 71 (Stevens, P.J., dissenting). Instead, the dissent opined that the privilege against self-incrimination is "irrelevant" to the decision to remain silent when the individual is "under no official compulsion to speak." Id. Even assuming arguendo that Defendant had a protected interest, the dissent concluded that the Commonwealth did not use his silence as substantive evidence of guilt because it never "specifically invite[d] the jury to infer guilt from [Defendant's] silence." Id. at 72. Moreover, the dissent emphasized that the jury is presumed to follow the instructions of the court,

which included a prohibition against viewing the statements of counsel as evidence and an acknowledgment that Defendant had a right not to testify. Alternatively, the dissent opined that it would find any error harmless in light of the evidence presented by the Commonwealth and the de minimis nature of the reference to Defendant's silence.

The Commonwealth filed a petition for allowance of appeal, and this Court granted review to consider whether "the Superior Court err[ed] in ruling that the use by the Commonwealth of a non-testifying defendant's pre-arrest silence as substantive evidence of his guilt infringes upon his constitutional right to be free from self-incrimination?" Commonwealth v. Molina, 51 A.3d 181, 182 (Pa. 2012).

I. Salinas v. Texas

In February 2013, we placed the case on hold pending the decision of the United States Supreme Court in Salinas v. Texas, which, inter alia, raised a claim regarding the use of pre-arrest silence as substantive evidence. As discussed below, the plurality decision of the High Court in that case did not resolve the issue, but instead affirmed the use of the defendant's silence in a fractured decision. Salinas v. Texas, __ U.S. __, 133 S.Ct. 2174 (2013). Prior to hearing argument, we allowed the parties to submit supplemental briefing addressing Salinas.

Salinas involved a defendant who was interviewed by police regarding a double murder in Houston. At the time of the interview, Salinas had not been arrested nor provided Miranda warnings. Initially, Salinas answered the officer's questions. However, when the officers inquired whether the shotgun shell casings recovered from the scene would match Salinas's gun, he "[l]ooked down at the floor, shuffled his feet, bit his bottom lip, cl[e]nched his hands in his lap, [and] began to tighten up." Id. at 2178 (brackets in original). "After a few moments of silence, the officer asked additional questions, which petitioner answered." Id.

While the High Court had accepted review in <u>Salinas</u> to resolve the split between the lower courts regarding the applicability of the Fifth Amendment to the use of a non-testifying defendant's precustodial silence as substantive evidence of guilt, it eventually divided on how to resolve the case. Three justices in the lead opinion did not speak to the use of pre-arrest silence as substantive evidence and instead dismissed Salina's claims because "he did not expressly invoke the privilege against self-incrimination in response to the officer's question." <u>Id.</u> at 2178. Two concurring justices did not address the issue of express invocation, but opined that "Salinas' claim would fail even if he had invoked the privilege because the prosecutor's comments regarding his precustodial silence did not compel him to give self-incriminating testimony." <u>Id.</u> at 2184 (Thomas, J., concurring). Finally, four dissenting justices determined that no ritualistic language was needed to invoke the right against self-incrimination, which was implied by the circumstances, and concluded that Salina's right was violated. <u>Id.</u> at 2189-2191. Accordingly, as three justices opined that Salinas did not properly invoke his privilege and two justices concluded that the privilege never applies to pre-arrest silence, five justices held that Salinas should not obtain relief. Given the absence of a majority on any rationale, the splintered decision, however, fails to provide guidance as to whether pre-arrest silence is ever protected under the Fifth Amendment if sufficiently invoked or what constitutes sufficient invocation of the right.

A search of our caselaw interpreting both the state and federal protections does not reveal any prior insistence by this Court that there be an express invocation of the right against self-incrimination. Instead, our precedent is more aligned with the dissenting four justices in <u>Salinas</u>, who concluded that the no ritualistic language is needed but rather found that invocation of the right may be apparent from the circumstances surrounding the defendant's statement. See, e.g., Commonwealth v.

<u>Chmiel</u>, 889 A.2d 501, 529-31 (Pa. 2005) (viewing statement "I don't think I better talk about that" as invocation of right to remain silent after initial waiver of <u>Miranda</u> rights).

As applied to this case, we determine that Defendant's actions in affirmatively and definitively refusing to come to the police station and ending the phone call were sufficient to invoke his right against self-incrimination and are distinguishable from Salinas's temporary muteness sandwiched between voluntary verbal responses to police questioning. Defendant's invocation is clarified upon consideration of the circumstances of the case. Regardless of whether Defendant had been officially designated a suspect, the detective's testimony demonstrated that Defendant and the detective were aware during the phone call that "[i]t was out on the street that someone said that [Defendant] was involved in her being missing." N.T., Dec. 14-20, 2006, at 480. Indeed, the prosecutor's closing argument emphasized the detectives' suspicions, noting that three days after Victim's disappearance, they were "knocking on the defendant's door because of something they heard, maybe he was holding this person against their [sic] will." <u>Id.</u> at 579. Moreover, it appears that the detective's suspicions were further raised when Defendant contradicted himself in regard to when he had last seen Victim, prompting her to request that he come to the station. Thus, at the least, both parties to the phone call were aware that he was suspected in the disappearance of Victim, even though the detective was unaware that the case involved a murder. We conclude that refusing to come to the police station to speak further with a detective and ending the phone call, in light of the circumstances of the case, constitutes an invocation of his right against self-incrimination, even absent a talismanic invocation of the constitutional provision.

<u>II. Constitutionality of the Use of Pre-Arrest Silence as Substantive Evidence</u>

Turning to the issue upon which we granted review, the Commonwealth maintains that the Superior Court erred in concluding that the prosecutor's reference to Defendant's pre-arrest silence violated his right against self-incrimination. The Commonwealth claims that this Court has drawn a line of significance between pre- and post-arrest silence, and that the "privilege against self-incrimination" does not extend backward from the post-arrest period to cover the pre-arrest timeframe scrutinized herein. Commonwealth's Brief ("Com. Brief") at 17. In support, the Commonwealth recounts the development of case law in the United States Supreme Court and this Court, noting that neither court has prohibited the use of a defendant's pre-arrest silence as substantive evidence of guilt. The Commonwealth emphasizes that the High Court, in Fletcher, 455 U.S. 603, held that the Fifth Amendment protection does not apply to post-arrest, pre-Miranda warning silence if the silence is used to impeach the defendant's testimony at trial. The Commonwealth observes that the High Court distinguished Fletcher from Doyle, 426 U.S. 610, where the Court had previously concluded that the defendant's due process rights would be violated by the use of defendant's silence after he had been assured of his right to remain silent through the provision of Miranda warnings.

Addressing our precedent, the Commonwealth acknowledges that this Court in Turner, 454 A.2d 537, rejected the United States Supreme Court's analysis in Fletcher and instead found that the Pennsylvania Constitution prohibited adverse comment upon a defendant's silence in post-arrest, pre-Miranda cases, where the Commonwealth attempts to impeach a defendant's testimony at trial. It emphasizes, however, that this Court refused to extend that protection in Bolus, 680 A.2d 839, to pre-arrest silence in impeachment cases, instead finding persuasive the decision in Jenkins, 447 U.S. 231 (concluding no due process or Fifth Amendment violation when using defendant's pre-

arrest silence as impeachment evidence). The Commonwealth contends that the sole distinguishing factor between our decisions in Turner and Bolus is the timing of the silence in relation to the arrest.

Noting that Bolus did not provide any rationale for the distinction between pre- and post-arrest, the Commonwealth ventures that the distinction is based upon the proposition that a defendant in custody is compelled to give evidence against himself. The Commonwealth emphasizes that the United States Supreme Court relied heavily on the issue of compulsion in Miranda. In contrast, the Commonwealth argues that defendants in the pre-arrest setting have not been removed from their normal surroundings and are not in custody such that one is "not under any compulsion to incriminate himself." Com. Brief at 23. The Commonwealth relies upon Justice John Paul Stevens' concurring opinion in Jenkins where he stated, "the privilege against compulsory self-incrimination is simply irrelevant to a citizen's decision to remain silent when he is under no official compulsion to speak." Id. at 24 (quoting Jenkins, 447 U.S. at 241 (Stevens, J., concurring)). Applying this language to the facts of this case, the Commonwealth contends:

> Given that [Defendant] was not only not under arrest when speaking with [the detective] but also not surrounded by antagonistic forces - rather, he was in his own home and talking to the officer on the phone during a call that he voluntarily made - there would seem to be no question that he was not in any way compelled to incriminate himself at that point.

Com. Brief at 25. Accordingly, the Commonwealth urges the Court to align with jurisdictions which have found the Fifth Amendment does not prohibit the use of pre-arrest silence as substantive evidence.[7][8]

In response, Defendant urges this Court to affirm the Superior Court and follow those jurisdictions that have found that the use of a non-testifying defendant's pre-arrest silence as substantive evidence of guilt is violative of the right against self-incrimination under both the federal and state constitutions.[9] Defendant rejects the Commonwealth's reliance on Miranda to suggest that the Fifth Amendment does not provide protection prior to arrest. Instead, the Defendant contends that the concern with the post-arrest period in Miranda was based on the need for all defendants to be aware of their rights, not to suggest that the rights do not exist prior to arrest.

---

[7] In support, the Commonwealth relies upon the following decisions of our sister courts: United States v. Oplinger, 150 F.3d 1061 (9th Cir. 1998), overruled on other grounds by United States v. Contreras, 593 F.3d 1135 (9th Cir. 2010); United States v. Zanabria, 74 F.3d 590 (5th Cir. 1996); State v. Lopez, 279 P.3d 640, 645 (Ariz. Ct. App. 2012); State v. Leecan, 504 A.2d 480 (Conn. 1986); People v. Schollaert, 486 N.W.2d 312 (Mich. App. 1992); State v. Borg, 806 N.W.2d 535 (Minn. 2011); State v. Helgeson, 303 N.W.2d 342 (N.D. 1981); State v. LaCourse, 716 A.2d 14 (Vt. 1998).

[8] The Pennsylvania District Attorneys Association filed an amicus curiae brief in support of the Commonwealth.

[9] Defendant relies upon the following decisions of our sister courts: Combs v. Coyle, 205 F.3d 269 (6th Cir. 2000); United States v. Burson, 952 F.2d 1196 (10th Cir. 1991); Coppola v. Powell, 878 F.2d 1562 (1st Cir. 1989); United States ex rel. Savory v. Lane, 832 F.2d 1011 (7th Cir. 1987); People v. Rogers, 68 P.3d 486 (Colo. App. 2002); People v. Welsh, 58 P.3d 1065 (Colo. App. 2002); State v. Moore, 965 P.2d 174 (Idaho 1998); Commonwealth v. Thompson, 725 N.E.2d 556 (Mass. 2000); State v. Rowland, 452 N.W.2d 758 (Neb. 1990); State v. Cassavaugh, 12 A.3d 1277 (N.H. 2010); State v. Leach, 807 N.E.2d 335 (Ohio 2004); State v. Palmer, 860 P.2d 339, 349 (Utah Ct. App. 1993); State v. Easter, 922 P.2d 1285 (Wash. 1996); State v. Fencl, 325 N.W.2d 703 (Wis. 1982); Tortolito v. State, 901 P.2d 387 (Wyo. 1995).

He avers that if the prosecution is allowed to argue pre-arrest silence as evidence of guilt, then:

> [A] person being questioned by the police has no right to stop answering questions posed by the police and must tell the truth. Thus, under this new law posed by the Commonwealth, persons will be required to confess unless they are innocent because the failure to talk and/or the failure to tell the truth will result in an instruction at trial to the jury that the defendant's response to the police questioning should be considered consciousness of guilt.

Defendant's Brief at 18.

Moreover, Defendant contends that to provide protection of the right against self-incrimination only upon arrest places the right inappropriately in the hands of the police. According to the Defendant, the police will interview a suspect prior to arrest in order to obtain either a statement or silence, knowing that the individual's pre-arrest silence can be used as evidence of guilt at trial, even though the same silence could not be used if it occurred the moment after arrest. Accordingly, Defendant urges this Court to affirm the Superior Court's decision that the prosecutor's use of his pre-arrest silence as substantive evidence violated his right against self-incrimination.

Accordingly, we consider whether the trial court committed reversible error in allowing the prosecutor, over defense counsel's objection, to use a non-testifying defendant's pre-arrest silence as substantive evidence of guilt because such use violated the defendant's constitutional right to be protected from self-incrimination. "As this is an issue involving a constitutional right, it is a question of law; thus, our standard of review is de novo, and our scope of review is plenary." Commonwealth v. Baldwin, 58 A.3d 754, 762 (Pa. 2012).

Initially, we recognize that the constitutionality of the use of pre-arrest silence as substantive evidence has split the federal circuit courts and state courts, engendering

numerous fractured decisions across the United States. While the United States Supreme Court accepted review of Salinas to resolve the issue, it appears to have created a new question regarding the sufficiency of invocation of the right under the Fifth Amendment without resolving whether the Fifth Amendment applies to the use of pre-arrest silence as substantive evidence of guilt, even if properly invoked.

When the federal constitutional jurisprudence has been unclear or in a state of flux, "this Court has not hesitated to render its independent judgment as a matter of distinct and enforceable Pennsylvania constitutional law." Pap's A.M. v. City of Erie, 812 A.2d 591, 607 (Pa. 2002) (addressing freedom of expression) (citing Commonwealth v. Smith, 615 A.2d 321, 325 (Pa. 1992) (extending double jeopardy protection under Pennsylvania Constitution) and Ins. Adjustment Bureau v. Ins. Comm'r, 542 A.2d 1317, 1324 (Pa. 1988) (addressing commercial speech)). Similarly, we have recognized that decisions based on Pennsylvania's Declaration of Rights "ensure[s] future consistency in state constitutional interpretation, since federal law is always subject to change." Commonwealth v. Lewis, 598 A.2d 975, 979 n.8 (Pa. 1991) (holding that defendant's rights under Article I, Section 9 were violated by the failure to provide a no-adverse inference instruction).

When considering the rights provided by the Pennsylvania Constitution, we are ever cognizant that the federal constitution provides the minimum levels of protection applicable to the analogous state constitutional provision. Commonwealth v. Edmunds, 586 A.2d 887, 894 (Pa. 1991). "[E]ach state has the power to provide broader standards, and go beyond the minimum floor which is established by the federal Constitution." Id. Accordingly, we are not bound by the decisions of the United States Supreme Court on similar constitutional provisions but instead may consider the

opinions for their persuasive value.  Pap's A.M., 812 A.2d at 601; Edmunds, 586 A.2d at 894-5.

As we stated in Pap's A.M., we conduct Pennsylvania constitutional analysis consistently with the model set forth in Edmunds.  Pap's A.M., 812 A.2d at 603.  "Under Edmunds, the Court should consider: the text of the relevant Pennsylvania Constitutional provision; its history, including Pennsylvania case law; policy considerations, including unique issues of state and local concern and the impact on Pennsylvania jurisprudence; and relevant cases, if any, from other jurisdictions."  Id.

A. Text

In considering the text of the provisions, we first look to their placement in the larger charter.  The structure of the Pennsylvania Constitution highlights the primacy of Pennsylvania's protection of individual rights: "The very first Article of the Pennsylvania Constitution consists of the Pennsylvania Declaration of Rights, and the first section of that Article affirms, among other things, that all citizens 'have certain inherent and indefeasible rights.'"  Pap's A.M., 812 A.2d at 603.[10]  Moreover, our charter further protects the rights detailed in Article I in Section 25, providing, "To guard against transgressions of the high powers which we have delegated, we declare that everything in this article is excepted out of the general powers of government and shall forever remain inviolate."  PA. CONST. art. I, § 25.  "Unlike the Bill of Rights of the United States Constitution which emerged as a later addendum in 1791, the Declaration of Rights in the Pennsylvania Constitution was an organic part of the state's original constitution of

---

[10]    Although originally contained in Article I, the Declaration of Rights were moved to Article IX, in the Constitution of 1790 and then returned to Article I in 1874.  See Ken Gormley, The Pennsylvania Constitution: A Treatise on Rights and Liberties § 12.1, at 327, Appendix I, at 877-78, 880-81, 887-89 (2004).

1776., and appeared (not coincidentally) first in that document." Edmunds, 586 A.2d at 896.

One of the rights protected in Article I is Section 9's right against self-incrimination. As is true of most of the provisions of the Pennsylvania Declaration of Rights, Section 9 was adopted in 1776 and served as a model for the protections provided by the Fifth Amendment of the United States Constitution as it predated the federal provision by fifteen years. See generally id. at 896 (discussing the historical background of the Pennsylvania Declaration of Rights). Originally, the provision was worded to provide that no "man" can "be compelled to give evidence against himself," with the current wording adopted in 1838. See Commonwealth v. Swinehart, 664 A.2d 957, 961 (Pa. 1995). Section 9 currently dictates, "In all criminal prosecutions, the accused . . . cannot be compelled to give evidence against himself."[11] PA. CONST. art. 1, § 9. This language is very similar to the Fifth Amendment, which provides: "[n]o

---

[11] Article I, Section 9 provides in full:

Rights of accused in criminal prosecutions

In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land. The use of a suppressed voluntary admission or voluntary confession to impeach the credibility of a person may be permitted and shall not be construed as compelling a person to give evidence against himself.

PA. CONST. art. 1, § 9.

person . . . shall be compelled in any criminal case to be a witness against himself."[12] U.S. CONST. amend. V. While we recognize that "no man" in the federal provision is arguably broader than "the accused" in Pennsylvania's section, we also observe that Pennsylvania's protection against being forced "to give evidence" is potentially more extensive than the federal protection against being "a witness against himself." Given the substantial similarity of the provisions, we do not find the textual differences dispositive. Moreover, "we are not bound to interpret the two provisions as if they were mirror images, even where the text is similar or identical." Edmunds, 586 A.2d at 895-96. Indeed, we have previously found Section 9 to provide greater protection than the Fifth Amendment, despite the similar language. See, e.g., Commonwealth v. Triplett, 341 A.2d 62 (Pa. 1975) (plurality) (holding, in the lead opinion as described below, that under the Pennsylvania Constitution an accused could not be impeached with his prior voluntary, but suppressed, statements; abrogated by subsequent amendment).

Other textual differences exist between the federal and state provisions which do not directly relate to the issue currently before this Court. For example, the final sentence of Section 9, which is not present in the Fifth Amendment, was added in 1984

---

[12] In full, the Fifth Amendment provides:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. CONST. amend. V.

in response to this Court's decision in Triplett. See Swinehart, 664 A.2d at 961. The amendment brought our jurisprudence into conformity with federal law on the limited issue of the use of prior suppressed statements. In Swinehart, 664 A.2d at 962, we stated that the amendment was "intended to ensure that the protection against self-incrimination under Article I, Section 9 would be interpreted similarly to the Fifth Amendment." Respectfully, we believe it overstates the amendment's intent to read it as applicable to any matter relating to one's right against self-incrimination, given that the amended language solely addresses the relatively narrow issue of the use of suppressed voluntary statements and does not extend more broadly to other questions related to the right against self-incrimination. Indeed, even in Swinehart, we concluded that the amended language did not relate to Swinehart's case regarding the extent of immunity and, instead, looked for guidance in the prior decisions of this Court, ultimately concluding that Pennsylvania's provision was broader than the federal provision, as discussed below.

The Pennsylvania Constitution also historically contained two exceptions to the right against self-incrimination not present in the federal charter. In 1874, Article III, Section 32 (repealed in 1967) and Article VIII, Section 10 (now renumbered Article VII, Section 8) were added to allow for compelled testimony regarding cases involving bribery or corrupt solicitations and contested elections, respectively. See Ken Gormley, The Pennsylvania Constitution: A Treatise on Rights and Liberties, § 12.6(c) at 387 n.318 (2004). The provisions stated that testimony could be compelled but "such testimony shall not afterwards be used against [the witness] in any judicial proceedings except for perjury in giving such testimony." PA. CONST. art. 7, § 8; see generally Gormley, The Pennsylvania Constitution, § 12.6(c), at 387-88; Leonard Sosnov, Criminal Procedure Rights Under the Pennsylvania Constitution: examining the Present

and Exploring the Future, 3 Widener J. Pub. L. 217, 306 (1993). While these provisions provide specific exceptions for when testimony can be compelled, they do not guide our analysis of whether the protections of Section 9 apply to pre-arrest silence.

Given that the textual distinctions between Section 9 and the Fifth Amendment do not definitively speak to the issue before the Court, we find more persuasive our jurisprudence interpreting the provisions, which also incorporates underlying policy considerations.

### B. History and Policy Considerations

Our precedent regarding the right against self-incrimination has generally developed in parallel or following the dictates of federal precedent interpreting the Fifth Amendment, particularly after the United States Supreme Court's 1965 decision in Griffin, 380 U.S. at 615 (holding that "the Fifth Amendment, in its direct application to the Federal Government and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt."). On most occasions, we have not considered whether differences exist between the federal and state provisions.

We recognize, however, that this Court has taken inconsistent stances in determining whether the right against self-incrimination under Section 9 exceeds the protections of the Fifth Amendment. At times, we have "stated that, except for the protection afforded by our Commonwealth's Constitution to reputation, the provision in Article I, § 9 which grants a privilege against self-incrimination tracks the protection afforded under the Fifth Amendment." Commonwealth v. Arroyo, 723 A.2d 162, 166 (Pa. 1999).[13] Similarly, we opined generally that we should not extend rights under our

---

[13]     While not relevant to the issues before this Court, Pennsylvania's constitution, unlike its federal counterpart, includes reputation as an "inherent and indefeasible" right:

(continued…)

Pennsylvania Constitution beyond those in the federal charter absent "a compelling reason to do so." Commonwealth v. Gray, 503 A.2d 921, 926 (Pa. 1985). In most of the cases where we have interpreted the rights as coextensive, however, we have indicated that the defendant failed to provide a convincing argument in favor of stronger protection under the Pennsylvania Constitution. See Arroyo, 723 A.2d at 167; Commonwealth v. Morley, 681 A.2d 1254, 1258 (Pa. 1996).

On several occasions, our Court has specifically concluded that the protections of Section 9 exceed those in its federal counterpart. Swinehart, 664 A.2d at 969 (addressing immunity and opining that "Article I, Section 9 is, in fact, more expansive than the Fifth Amendment" but not so much as to require greater protection than that provided by the relevant statute); Turner, 454 A.2d 537 (rejecting Fletcher v. Weir, 455 U.S. 603, and holding that reference to post-arrest, pre-Miranda silence violates Article I, Section 9); Triplett, 341 A.2d 62 (plurality) (diverging, under the lead opinion, from Harris v. New York, 401 U.S. 222 (1971), and concluding that use of suppressed but voluntary statements to impeach a defendant's testimony violated Article I, Section 9, later abrogated by constitutional amendment). Cf. Edmunds, 586 A.2d at 898 (observing in regard to Article I, Section 8 of the Pennsylvania Constitution that from 1961-1973, this Court "tended to parallel the cases interpreting the 4th Amendment," but "beginning in 1973, our case-law began to reflect a clear divergence from federal precedent."). Given the arguably contradictory holdings regarding the interaction

(…continued)
> All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness..

PA. CONST. art. I, § 1.

between Section 9 and the Fifth Amendment, we must consider our precedent regarding the right against self-incrimination more broadly to determine whether Section 9 protects a defendant's decision to remain silent in the pre-arrest context.

Our jurisprudence regarding references to a defendant's silence is severable into identifiable categories. We initially consider precedent addressing the right against self-incrimination generally. Next, we review those cases where reference to silence is permissible to impeach a defendant who has waived his right by testifying at trial or where counsel has raised an argument necessitating the prosecution's fair response. Additionally, we recognize that courts have created an exception to this general impeachment and fair response rule when the provision of Miranda warnings induces a defendant's silence, such that reference to the silence would violate Fourteenth Amendment due process rights, even if it would not violate the Fifth Amendment right against self-incrimination. Finally, in turning to the specific question of pre-arrest silence, we discuss this Court's decision in Bolus, which addressed pre-arrest silence in the impeachment context, but specifically left open the question currently before the Court regarding the use of silence as substantive evidence of guilt.

1. General Right Against Self-Incrimination

Similar to the Fifth Amendment, Article I Section 9 dictates that the accused "cannot be compelled to give evidence against himself." PA. CONST. art. I, § 9. The United States Supreme Court has broadly defined the reach of this protection, given its importance in the structure of our judicial system:

> The privilege reflects a complex of our fundamental values and aspirations, and marks an important advance in the development of our liberty. It can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures which the witness reasonably believes could be

used in a criminal prosecution or could lead to other evidence that might be so used.

Kastigar v. U.S., 406 U.S. 441, 444-45 (1972) (footnotes omitted).

We have acknowledged, however, the "inherent conflict" between the right against self-incrimination and our system's reliance on compelled testimony. Swinehart, 664 A.2d at 967. While we have credited the "public['s] right to every man's evidence," our courts have emphasized the need for the protection against self-incrimination to avoid the "cruel trilemma of self-accusation, perjury or contempt" that faced those brought before tribunals such as the Star Chamber in England.[14] Id. (internal citation omitted). Through forced confession, individuals had to choose whether to incriminate themselves, perjure themselves, or be held in contempt if they remained silent. See Id.; see generally Andrew Bentz, Note, The Original Public Meaning of the Fifth Amendment and Pre-Miranda Silence, 98 Va. L. Rev. 897, 909-912 (2012). As Dean Gormley has observed, "the prohibition against conviction by a process of inquisition is the crown jewel" of all rights afforded the accused under federal and state constitutions. Gormley,

---

[14] The Star Chamber was an English court of law existing from the Fifteenth to Seventeenth Centuries. The United States Supreme Court described its relevance to the enactment of the Fifth Amendment's right against self-incrimination:

> Historically, the privilege was intended to prevent the use of legal compulsion to extract from the accused a sworn communication of facts which would incriminate him. Such was the process of the ecclesiastical courts and the Star Chamber - the inquisitorial method of putting the accused upon his oath and compelling him to answer questions designed to uncover uncharged offenses, without evidence from another source.

Pennsylvania v. Muniz, 496 U.S. 582, 595-596 (1990) (quoting Doe v. U.S., 487 U.S. 210, 212 (1988)).

The Pennsylvania Constitution, § 12.6(a), at 386 (internal quotations, citations and footnote omitted).

As the United States Supreme Court did in <u>Griffin</u>, this Court has viewed the right against self-incrimination as protecting silence as well as overt self-incrimination.[15] In <u>Dravecz</u>, Justice Musmanno explained how silence and self-incrimination are tied:

> Under common law and, of course, this was doubly true in medieval continental Europe, forced confessions were as common as they were cruel and inhuman. The framers of our Bill of Rights were too aware of the excesses possible in all governments, even a representative government, to permit the possibility that any person under the protection of the United States flag could be forced to admit to having committed a crime. In order to make the protection hazard-proof, the framers went beyond coercion of confessions. They used the all-embracive language that no one could be compelled 'to be a witness against himself'. What did the Trial Court in this case do but compel Dravecz to be a witness against himself? Dravecz had said nothing, yet because something was read to him, to which he made no comment, the prosecution insisted that Dravecz admitted guilt. If Dravecz could not be made a self-accusing witness by coerced answers, he should not be made a witness against himself by unspoken assumed answers.

<u>Commonwealth v. Dravecz</u>, 227 A.2d 904, 907 (Pa. 1967) (plurality). Our Court took the occasion of the <u>Dravecz</u> case to further explore the ambiguity inherent in silence, as noted above, recognizing that not all those accused of a crime immediately declare their innocence, but some may be made speechless by the accusation. <u>Id.</u> Other courts, as did the Superior Court below, have similarly observed that innocent individuals accused

---

[15] As discussed <u>infra</u> at 33 we recognize that some justices of both the United States Supreme Court and this Court view the Fifth Amendment as limited to protecting only compelled speech, rather than silence.

of a crime may also remain silent for fear that their explanation will not be believed or to protect another. Molina, 33 A.3d 65-66.

Since Griffin, the protection of a defendant's silence has become imbedded in our jurisprudence. See, e.g., Com. v. Wright, 961 A.2d 119, 143 (Pa. 2008) ("[T]his Court vigilantly protects the right to remain silent and recognizes references to an accused's exercise of this right may jeopardize the presumption of innocence in the jury's mind."); cf. Edmunds, 586 A.2d at 900 (discussing New Jersey Supreme Court's recognition of a right that is accepted and then becomes imbedded in the state's jurisprudence under a state constitution after twenty-five years of consistent application). Moreover, this Court additionally opined nearly forty years ago that "[t]he prohibition of any reference to an accused's silence reflects the court's desire that an accused not be penalized for exercising his constitutional rights." Commonwealth v. Greco, 350 A.2d 826, 828 (Pa. 1976). Our jurists have long recognized that "most laymen view an assertion of the Fifth Amendment privilege as a badge of guilt," noting that the privilege "would be reduced to a hollow mockery if its exercise could be taken as equivalent either to a confession of guilt or a conclusive presumption of perjury." Commonwealth v. Haideman, 296 A.2d 765, 767 (Pa. 1972) (quoting Walker v. United States, 404 F.2d 900, 903 (5th Cir. 1968) and Slochower v. Board of Higher Ed. of N.Y., 350 U.S. 551, 557 (1956)); see also Commonwealth v. Singletary, 387 A.2d 656, 657 (Pa. 1978) (finding that the Commonwealth violated the defendant's Fifth Amendment right and opining that "where one is accused of a criminal offense and remains silent, a lay person could and probably would consider this silence to be an unnatural reaction unless the accused was in fact guilty"). Accordingly, this Court has long protected a defendant's silence as part of the right against self-incrimination.

2. Permitted Use of Silence as Impeachment Evidence or Fair Response

Under both state and federal precedent, the analysis changes dramatically once a defendant decides to testify because he has waived his right against self-incrimination: "His waiver is not partial; having once cast aside the cloak of immunity, he may not resume it at will, whenever cross-examination may be inconvenient or embarrassing." Raffel v. U.S., 271 U.S. 494, 497 (1926). As the Supreme Court noted in Jenkins, it would undermine the fundamental truth-seeking purpose of our adversary system to prevent the prosecution from questioning the validity of the defendant's testimony in an attempt to uncover fabricated defenses: "Once a defendant decides to testify, the interests of the other party and regard for the function of courts of justice to ascertain the truth become relevant, and prevail in the balance of considerations determining the scope and limits of the privilege against self-incrimination." Jenkins, 447 U.S. at 238 (internal quotation marks, alternation, and citation omitted). Accordingly, the prosecution may impeach the testifying defendant with his prior statements, actions, or silence, regardless of whether the statements, actions, or silence occurred prior to or after the reading of Miranda rights[16] or the defendant's arrest, if the defendant waives his right against self-incrimination by testifying.

In addition to impeachment, the Commonwealth may utilize a defendant's silence, including pre-arrest silence, as fair response to a defendant's argument at trial. Specifically, in DiNicola, we allowed reference to a defendant's refusal to speak to a trooper as a fair response to defense counsel's questioning of the adequacy of the trooper's investigation. 866 A.2d at 335-36. Thus, while we hold the right to remain silent sacrosanct, we also protect our adversarial system by allowing cross-examination of a testifying defendant and fair response to the defense's arguments.

---

[16] Although a testifying defendant's right is not infringed by reference to his prior silence, given his waiver, a violation of his due process rights may occur because his silence was induced by Miranda warnings, see infra at 30.

In a related issue, we recognize that three justices of this Court diverged from federal precedent involving the right against self-incrimination in an impeachment scenario. Triplett, 341 A.2d 62 (plurality). The lead opinion rejected the United States Supreme Court's decision in Harris v. New York, 401 U.S. 222, in which the court held that constitutionally infirm statements could be used to impeach a defendant's trial testimony if the statements were "obtained under circumstances that would not detract from the trustworthiness of the statement[s]." Triplett, 341 A.2d at 64. The justices opined under Article I, Section 9 that any statement deemed inadmissible by a suppression court could not be utilized to impeach the defendant's testimony at trial. Id. They observed, that to do otherwise, would force a Hobson's choice on the defendant faced with deciding whether to decline the right to testify or risk impeachment with the suppressed statements. Id. Later, however, Section 9 was amended to provide specifically that "The use of a suppressed voluntary admission or voluntary confession to impeach the credibility of a person may be permitted and shall not be construed as compelling a person to give evidence against himself." PA. CONST. art. 1, § 9. This amendment protects our adversary system by allowing the Commonwealth to challenge the defendant's testimony at trial with prior inconsistent statements. We observe, however, that this amendment does not impact the question before this Court regarding the significance of the right against self-incrimination in a case not involving impeachment with prior inconsistent statements. Moreover, despite the amendment, the holding in Triplett indicates the lead opinion's view of Article I, Section 9 as broader than the Fifth Amendment.

3. Due Process Exception to Use of Silence as Impeachment in Post-Miranda Warning Cases

Although the case at bar involves pre-arrest silence, and thus does not concern the provision of <u>Miranda</u> warnings and resulting due process concerns, we consider the post-<u>Miranda</u> warning cases to understand why courts found the timing of a defendant's silence relevant to determining whether reference to that silence is permissible and to examine another area of jurisprudence where this Court has imposed more stringent protection of the right against self-incrimination.

Although, as discussed above, a defendant's testimony may generally be impeached with prior silence, courts have concluded that a prosecutor may not use a defendant's silence after the provision of <u>Miranda</u> warnings. In <u>Doyle</u>, 426 U.S. 610, the Supreme Court held that the prosecution violated a defendant's due process rights when it used the defendant's pre-trial silence to impeach the defendant's testimony after the defendant had been assured of his right to remain silent through <u>Miranda</u> warnings and potentially induced to remain silent. The court additionally recognized the diminished probative value of silence, post-<u>Miranda</u> warnings. "Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these <u>Miranda</u> rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested." <u>Id.</u> at 617.

The High Court, in a <u>per curiam</u> opinion in <u>Fletcher</u>, 455 U.S. 603, rejected an attempt to extend the due process protection of <u>Doyle</u> to the post-arrest, pre-<u>Miranda</u> warning period. Instead, the Court allowed prosecutors to impeach a testifying defendant regarding his post-arrest, pre-<u>Miranda</u> warning silence, given that the defendant had not been induced to remain silent by the warnings. The Court, therefore, found no due process violation.

Mere months after <u>Fletcher</u>, this Court diverged from the High Court's view of the use of silence for impeachment purposes in <u>Turner</u>, 454 A.2d 537. While <u>Doyle</u> and

Fletcher addressed due process concerns, this Court utilized Pennsylvania's protection against self-incrimination, deeming it more restrictive than the federal provision and concluding that Pennsylvania has "traditionally viewed such references to the accused's silence as impermissible for a variety of reasons." Id. at 539. We "decline[d] to hold, under the Pennsylvania Constitution, that the existence of Miranda warnings, or their absence, affects a person's legitimate expectation not to be penalized for exercising the right to remain silent." Id. at 540. Relying on our prior decisions in Singletary, Greco, and Haideman, we recognized "a strong disposition on the part of lay jurors to view the exercise of the Fifth Amendment privilege as an admission of guilt." Id. at 539. Additionally, we rejected the High Court's conclusion that protection is only required post-Miranda warnings. Instead, we emphasized our prior conclusion that the extent of the right against self-incrimination is not altered by whether it was induced by Miranda warnings or by prior knowledge of the right. Id. (citing Commonwealth v. Easley, 396 A.2d 1198, 1200-01 n.5 (Pa. 1979)). Therefore, given the substantial prejudice to the defendant combined with the limited probative value resulting from the "insoluble ambiguity" of silence, we prohibited reference to a defendant's silence except to impeach a factual inconsistency in defendant's version of events, such as if he claimed to have provided a post-arrest statement to police. Turner, 454 A.2d at 539-40.[17]

    4. Pre-Arrest Silence

---

[17] In another case related to Miranda warnings not directly relevant to the issue before this Court, a plurality of this Court imposed more stringent protections on the right against self-incrimination than the federal jurisprudence, requiring that police obtain an explicit waiver of Miranda rights, rather than adopting the minimal criteria set by the United States Supreme Court in North Carolina v. Butler, 441 U.S. 369 (1979), where the High Court found evidence of an implicit waiver of rights to be sufficient. Commonwealth v. Bussey, 404 A.2d 1309, 1314-5 (Pa. 1979) (plurality).

Given that this case does not involve the Fourteenth Amendment due process concerns of post-Miranda warning cases, we turn back to the right against self-incrimination, specifically in regard to pre-arrest silence. In Bolus, 680 A.2d 839, this Court refused to apply Turner to the pre-arrest period. While we acknowledged the demarcation, we failed to explain the relevance of the pre- and post-arrest time periods to the legal underpinnings of the right to silence. Id. at 843. Instead, we found persuasive the United States Supreme Court's holding in Jenkins, providing that pre-arrest silence could be utilized to impeach a testifying defendant's credibility. Id. Nonetheless, in a footnote, we specifically avoided deciding whether to extend the holding to situations involving the use of pre-arrest silence as substantive evidence, the issue before the Court herein. Id. at 844 n.5.[18]

The question of whether reference to a non-testifying defendant's pre-arrest silence violates the defendant's right against self-incrimination is now squarely before this Court. As discussed below, we conclude that the timing of the silence, whether it be pre or post-arrest, or pre or post-Miranda warnings, is not relevant to the question of whether a prosecutor's use of the silence as substantive evidence of guilt violates an individual's right against self-incrimination. While our courts have found the timing of a defendant's silence in relation to the provision of Miranda warnings to be extremely relevant to a defendant's due process rights, see Doyle, 426 U.S. 610, the underpinnings of the right against self-incrimination are not based on timing but on whether a person has been compelled to be a witness against himself at a criminal proceeding. Regardless of whether a forced confession is obtained prior to the official

_____

[18]    We also acknowledged that the defendant in Bolus failed to present an argument for distinguishing the protections provided by Section 9 from the federal provisions. Bolus, 680 A.2d at 844.

act of an arrest or after, it is not admissible at trial as it would result in the defendant being "compelled to give evidence against himself." PA. CONST. art. 1, § 9.

We recognize, however, that some do not view the drawing of an adverse inference of guilt from silence as within the protection of the right against self-incrimination because it is not "compelled" in the traditional sense. See Molina, 33 A.3d at 71 (opining that "the privilege against self-incrimination is irrelevant to a citizen's decision to remain silent when he or she is under no official compulsion to speak") (Stevens, J., dissenting); see also Salinas, 133 S.Ct. at 2184 (Thomas, J., concurring); Mitchell v. United States, 526 U.S. 314, 331 (1999) (Scalia, J., dissenting); Jenkins, 447 U.S. at 241 (Stevens, J., concurring). We respectfully disagree with the non-binding reasoning of these jurists and, instead, view the drawing of an adverse inference from a defendant's silence to be encompassed within the right against compelled self-incrimination. We recognize that the right is not violated by a mere reference to a defendant's silence, as occurred during the detective's testimony in this case while she explained her investigation. See DiNicola, 866 A.2d at 336-37 ("[T]he mere revelation of silence does not establish innate prejudice"). The right against self-incrimination is burdened, however, when the mention of a defendant's silence is used by the prosecutor as substantive evidence of guilt. Cf. id. at 337 (finding no violation where the defendant's silence "was not used in any fashion that was likely to burden Appellee's Fifth Amendment right or to create an inference of an admission of guilt.").

Justice Musmanno captured the conundrum: "If [a defendant] could not be made a self-accusing witness by coerced answers, he should not be made a witness against himself by unspoken assumed answers." Dravecz, 227 A.2d at 907. Similarly, Justice Thurgood Marshall stated in Jenkins, "the only means of compelling a person to incriminate himself is to penalize him if he does not." Jenkins, 447 U.S. at 250 n.4

(Marshall, J., dissenting); see also Bentz, 98 Va. L. R. at 930 ("[T]he government cannot argue both that the person's silence is relevant and therefore admissible because a normal person would feel compelled to speak, but also argue that the Fifth Amendment does not apply because the person is not compelled."). Allowing a prosecutor to use silence as substantive evidence of guilt merely reintroduces a modern version of the "cruel trilemma," where a defendant is compelled to choose between confessing, perjuring themselves, or remaining silent, where that silence can be used at trial to infer guilt. Combs v. Coyle, 205 F.3d 269, 285 (6th Cir. 2000); Taylor v. Commonwealth, 495 S.E.2d 522, 528 (Va. Ct. App. 1998).

Moreover, allowing reference to a defendant's silence as substantive evidence endangers the truth-determining process given our recognition that individuals accused of a crime may remain silent for any number of reasons. See Dravecz, 227 A.2d at 907. As in this case, a defendant's silence in the face of police questioning is "insolubly ambiguous" as it could be indicative of a busy schedule, a distrust of authority, an unwillingness to snitch, as much as it is indicative of guilt. Nonetheless, as we noted in Turner, jurors generally view silence as an indication of guilt. Turner, 454 A.2d at 539.

We observe that the timing of the silence has little relevance to whether use of that silence as evidence of guilt will impinge on the right against self-incrimination. We have previously concluded that "[t]he difference between prosecutorial use of an accused's silence at [t]rial and the use of an accused's silence at [a]rrest is . . infinitesimal." Haideman, 296 A.2d at 767 (internal quotation marks and citation removed). In Turner, we likewise reiterated that no "reason exists to differentiate between situations where the right to remain silent is exercised following [Miranda] warnings and where it is exercised without warnings being given," especially considering that in this day most are aware of the Miranda warnings and their "right to

remain silent." Turner, 454 A.2d at 540 (quoting Commonwealth v. Easley, 396 A.2d at 1200-01 n.5). Similarly, we have interpreted Dravecz to prohibit the use of silence as an implied admission where the silence occurred when in custody or "in the presence of police," although it did not extend to the use of silence as an implied admission outside the presence of police. Commonwealth v. Coccioletti, 425 A.2d 387, 392 (Pa. 1981) (opining that silence in the face of co-participant's inculpatory declaration was admissible pursuant to the implied admission exception to hearsay rule, given that it occurred outside the presence of police); accord Combs, 205 F.3d at 283 (quoting Coppola v. Powell, 878 F.2d 1562, 1565 (1st Cir. 1989) (holding "that application of the privilege is not limited to persons in custody or charged with a crime; it may also be asserted by a suspect who is questioned during the investigation of a crime"). Thus, we conclude that the timing of the silence in relation to the timing of an arrest is not relevant to the right against self-incrimination.

Accordingly, we conclude that our precedent, and the policies underlying it, support the conclusion that the right against self-incrimination prohibits use of a defendant's pre-arrest silence as substantive evidence of guilt, unless it falls within an exception such as impeachment of a testifying defendant or fair response to an argument of the defense.

C. Other jurisdictions

In addition to reviewing the text, history, and policies relating to the Pennsylvania constitutional provisions, under Edmunds, we also consider the opinions of our sister states. In so doing, our goal is not to create a "score card," but rather to consider whether the underlying logic of the decisions informs our analysis of the related Pennsylvania provision. Edmunds, 586 A.2d at 900. We recognize that the First, Sixth, Seventh and Tenth Circuits have concluded that use of pre-arrest silence as substantive

evidence of guilt is inadmissible as violative of the right against self-incrimination, while the Fifth, Ninth, and Eleventh have found no constitutional violation, reasoning that the defendant is not subject to government compulsion before he is arrested.[19] Similarly, the question has divided state courts across the nation, through numerous, often, fractured, decisions.[20] Jurists on these courts have ably set forth the competing arguments surrounding the use of pre-arrest silence as substance evidence. We find all

---

[19] The following Courts of Appeals have concluded that use of pre-arrest silence as substantive evidence is unconstitutional: Combs v. Coyle, 205 F.3d 269 (6th Cir. 2000); United States v. Burson, 952 F.2d 1196 (10th Cir. 1991); Coppola v. Powell, 878 F.2d 1562 (1st Cir. 1989); United States ex rel. Savory v. Lane, 832 F.2d 1011 (7th Cir. 1987).

The following Courts of Appeals have concluded that use, as substantive evidence, of silence prior to arrest is constitutional: United States v. Oplinger, 150 F.3d 1061 (9th Cir. 1998), overruled on other grounds by United States v. Contreras, 593 F.3d 1135 (9th Cir. 2010); United States v. Zanabria, 74 F.3d 590 (5th Cir. 1996); United States v. Rivera, 944 F.2d 1563, 1568 n.12 (11th Cir. 1991).

[20] The following state courts have concluded that use of pre-arrest silence as substantive evidence is unconstitutional: People v. Welsh, 58 P.3d 1065 (Colo. App. 2002); State v. Moore, 965 P.2d 174 (Idaho 1998); State v. Lovejoy, 89 A.3d 1066 (Me. 2014); Commonwealth v. Thompson, 725 N.E.2d 556 (Mass. 2000); State v. Rowland, 452 N.W.2d 758 (Neb. 1990); State v. Cassavaugh, 12 A.3d 1277 (N.H. 2010); State v. Boston, 663 S.E.2d 886 (N.C. St. App. 2008); State v. Leach, 807 N.E.2d 335 (Ohio 2004); State v. Palmer, 860 P.2d 339 (Utah Ct. App. 1993); Taylor v. Commonwealth, 495 S.E.2d 522 (Va. Ct. App. 1998) (based upon Virginia constitutional provision); State v. Easter, 922 P.2d 1285 (Wash. 1996); State v. Fencl, 325 N.W.2d 703 (Wis. 1982); Tortolito v. State, 901 P.2d 387 (Wyo. 1995) (based upon Wyoming constitutional provision).

The following state courts have concluded that use of pre-arrest silence as substantive evidence is constitutional: State v. Lopez, 279 P.3d 640, 645 (Ariz. Ct. App. 2012); People v. Schollaert, 486 N.W.2d 312 (Mich. Ct. App. 1992); State v. Borg, 806 N.W.2d 535 (Minn. 2011); State v. Masslon, 746 S.W.2d 618, 626 (Mo. Ct. App. 1988); State v. Helgeson, 303 N.W.2d 342 (N.D. 1981); Salinas v. State, 368 S.W.3d 550 (Tex. Ct. App. 2011), affirmed on other basis, 133 S.Ct 2174 (2013); State v. LaCourse, 716 A.2d 14 (Vt. 1998).

of these discussions insightful and helpful to our analysis. However, we ultimately base our decision on the Pennsylvania constitution and our precedent applying the right against self-incrimination.

After reviewing Article I, Section 9 of the Pennsylvania Constitution pursuant to Edmunds, we conclude that the factors weigh in favor of diverging from the currently asserted minimum standard of federal protection of the right against self-incrimination in regard to the use of pre-arrest silence as substantive evidence. Specifically, while we recognize the textual similarities with the Fifth Amendment, we conclude that the primacy of the Declaration of Rights to Pennsylvania's charter requires stronger protection of our liberties than under the federal counterpart. More significantly, we emphasize that, while this Court has often tracked federal jurisprudence in regard to the right against self-incrimination, we have interpreted Section 9 to provider a broader right on several occasions, including Triplett, Turner, and Swinehart. We find significant guidance from Turner where this Court diverged from federal precedent on an issue closely related to the issue at bar. In Turner, we refused to allow the use of a defendant's decision to remain silent post-arrest to impeach the defendant's trial testimony, unless the defendant at trial claims he did not previously remain silent. Accordingly, we hold that Article I, Section 9 is violated when the prosecution uses a defendant's silence whether pre or post-arrest as substantive evidence of guilt.

Turning to the facts of this case, we agree with the Superior Court that the prosecutor violated Defendant's Fifth Amendment right against self-incrimination when he emphasized Defendant's silence as "most telling," by asking "why" Defendant refused to cooperate with the detective, and then instructing the jury to "[f]actor that in when you're making an important decision in this case as well." N.T., Dec. 14-20, 2006, at 581. While the prosecutor's argument is not evidence, the prosecutor used the

evidence referencing Defendant's silence to imply his guilt, in essence making him "a witness against himself by unspoken assumed answers." Dravecz, 227 A.2d at 907. Cf. Easley, 396 A.2d at 1202 (finding a prosecutor's comment on a prior, admitted reference to silence, unconstitutionally "implied to the jury that Easley's silence at the time of arrest was evidence of guilt"). Accordingly, we hold that the prosecutor's use of the properly admitted evidence of Defendant's pre-arrest silence to infer guilt violates Article I, Section 9 of the Pennsylvania Constitution.[21]

III.  Harmless Error Analysis

A violation of Section 9, however, does not automatically result in a reversal. Instead, we consider the Commonwealth's alternative argument that any error was harmless. The Commonwealth asserts that the reference to Defendant's silence in this case was a "lone mention" in a closing argument covering nearly thirty transcript pages that did not suggest that the failure to come to the police station constituted an

---

[21]  Moreover, I note that the ramifications of a decision condoning this prosecutor's closing statement are noteworthy.  It is without controversy under our Fourth Amendment/Article I, Section 8 jurisprudence that a citizen has the right to break off a mere encounter with police by declining to speak and walking away. Commonwealth v. Ickes, 873 A.2d 698, 701-02 (Pa. 2005).  While the defendant in this case walked away telephonically, he nevertheless did no more than break off a mere encounter with a police officer.  To find that his actions are admissions of substantive guilt unprotected by Article 1, Section 9 puts every citizen of Pennsylvania in the "cruel trilemma" referenced repeatedly by the United States Supreme Court and this Court.  See Pennsylvania v. Muniz, 496 U.S. 582, 596 (1990); Swinehart, 664 A.2d at 967.  If a citizen exercises his well-established right to walk away without consequences under the Fourth Amendment/Article I, Section 8, he can find that he has nevertheless somehow admitted guilt by remaining silent under Article I, Section 9.  Removing the ability to remain silent without negative effect leaves a defendant with the choice to speak and incriminate himself or to commit perjury.  These options are inconsistent with his seeming Fourth Amendment/Article I, Section 8 right to break off the encounter and his Article I, Section 9 right against self-incrimination.  To place our citizens on the horns of this trilemma during every mere encounter with police simply cannot be constitutionally countenanced, yet that is the proposition the Commonwealth espouses herein.

admission of guilt. Accordingly, the Commonwealth urges the Court to reverse the decision of the Superior Court and reinstate the judgment of sentence.

In contrast, Defendant maintains that the error in this case was not harmless because the Commonwealth's evidence was based substantially upon what it viewed as the biased and contradictory testimony of Michael Benintend, who was initially charged with the murder, and Pam Deloe, who was a drug-addicted prostitute with a motive to testify against Defendant. Given the critical importance of the credibility assessments of these two witnesses, Defendant maintains that the evidence of guilt was not overwhelming. He further argues that the prejudice was not de minimis given that the prosecutor implored the jury to factor his silence in when deciding the case. Accordingly, Defendant urges this Court to affirm the Superior Court's decision.

"[T]he proper standard for determining whether an error involving state law is harmless is the same as the standard this Court applies to federal constitutional error: an error can be harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless." Commonwealth v. Story, 383 A.2d 155, 162 (Pa. 1978) (citing Chapman v. California, 386 U.S. 18, 21 (1967)) see also Commonwealth v. Murray, 83 A.3d 137, 165 (Pa. 2013) ('[T]he same beyond a reasonable doubt measure should govern errors of state law, regardless of whether the error is of constitutional or non-constitutional magnitude.") (Castille, C.J., concurring). We have found error to be harmless where:

> (1) the error did not prejudice the defendant or the prejudice was de minimis; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

<u>Wright</u>, 961 A.2d at 143 (quoting <u>Commonwealth v. Young</u>, 748 A.2d 166, 193 (Pa. 1999) and <u>Commonwealth v. Robinson</u>, 721 A.2d 344, 350 (Pa. 1998)). "[T]he burden of establishing that the error was harmless beyond a reasonable doubt rests with the Commonwealth." <u>Story</u>, 383 A.2d at 162 n.11.

The Commonwealth's case against Defendant was based on the testimony of the two eyewitnesses and several other witnesses who supported the details of the eyewitnesses' testimony and provided information regarding Victim's activities on the morning of the murder. Given the questionable credibility of the two primary eyewitnesses, Michael Benintend and Pam Deloe, as detailed below, we conclude that the prosecutor's entreaty for the jury to "[f]actor" in Defendant's failure to meet with the detective was prejudicial and not <u>de minimis</u>. Moreover, Defendant's silence was not cumulative of any other evidence. We additionally conclude that the other evidence in the case is not overwhelming. While we do not discount the heinous crime involved and have empathy for the loved ones of the victim, we cannot ignore that the blame for the crime was placed on Defendant by Michael Benintend and Pam Deloe whose credibility was significantly questioned during trial, allowing the real potentiality that the jurors could have been swayed to believe the witnesses after considering the inference that the Defendant had something to hide by not meeting with the Missing Persons Unit detective, as urged by the prosecutor.

To elaborate, Benintend testified that he called Victim to sell him drugs at Benintend's home where Defendant later arrived. Benintend further claimed to have witnessed Defendant ask Victim for money she owed him and, when she did not pay, watched Defendant beat Victim viciously with his hands and then a baseball bat. Benintend asserted that he ran out the back door while Defendant continued to beat Victim. Soon thereafter he moved to Key West, Florida. Given that the body was found

in the house in which Benintend lived, he was originally charged with the murder. When first questioned by detectives in Florida, he did not reveal any information about the murder. However, in the second interview, he placed the blame on Defendant. Benintend eventually pled guilty to aggravated assault, unlawful restraint, and criminal conspiracy in exchange for his testimony against Defendant. Indeed, the trial court at sentencing recognized that, while the facts pointed to Defendant as the perpetrator, "Mr. Benintend's involvement was substantially greater than he has let it on to be." N.T., March 15, 2007, at 13. Benintend also had prior crimen falsi convictions.

Pam Deloe testified that she drove with Defendant to Benintend's house. After hearing screaming from the house, she claims to have entered the house and tried to stop the horrific beating of Victim, but Defendant pushed her away. Deloe also alleged that Benintend blocked Victim's exit from the premises. She claimed that she left the house and that Defendant followed approximately fifteen seconds later. As previously mentioned, Deloe was also present when the detective initially came to Defendant's house looking for Victim. Moreover, she claims that Defendant kidnapped her after Victim's body was found and took her to Connecticut, where he was eventually arrested.

However, Deloe admitted to being a prostitute and drug addict who was being supported by Defendant. She acknowledged having difficulty remembering, which she blamed on beatings she received from Defendant, for which he was also on trial at the time of the murder proceeding. Moreover, in a confusing portion of her testimony that evidenced her faulty memory, Deloe alleged that Defendant severely beat her when she accused him publicly of Victim's murder. However, the hospital record introduced to support the alleged beating was for treatment that occurred prior to the murder, thus arguably undermining her claims. N.T., Dec. 14-20, 2006, at 234-36. Defense counsel further highlighted several inconsistencies between Benintend and Deloe's testimony,

including whether another man, named Troy, was present in the house during the murder and whether Benintend remained in the house after Defendant left. Recognizing the significant credibility issues concerning the eyewitness testimony of Benintend and Deloe, we are not "convinced beyond a reasonable doubt that the error was harmless." <u>Story</u>, 383 A.2d at 162. As we have noted, "it is far worse to conclude incorrectly that the error was harmless than it is to conclude incorrectly that the error was reversible." <u>Commonwealth v. Davis</u>, 305 A.2d 715, 719 (Pa. 1973).

Accordingly, we conclude that the prosecutor's use of the non-testifying defendant's silence as substantive evidence of guilt was not harmless. Therefore, we would affirm the decision of the Superior Court reversing the judgment of sentence and remanding for a new trial.

Mr. Justice Stevens did not participate in the consideration or decision of this case.

Former Justice McCaffery did not participate in the decision of this case.

Mr. Justice Saylor files a concurring opinion in which Madame Justice Todd joins.

Mr. Chief Justice Castille files a dissenting opinion.

Mr. Justice Eakin files a dissenting opinion.