Carter KNOUSE, Petitioner

v.

WORKERS' COMPENSATION APPEAL BOARD (G.O.D., INC.), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 16, 2005.

Decided Nov. 7, 2005.

Lester Krasno, Pottsville, for petitioner.

Sharolyn L. Murphy, Philadelphia, for respondent.

BEFORE: FRIEDMAN, Judge, LEADBETTER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Carter Knouse (Claimant) petitions for review of the May 9, 2005, order of the Workers' Compensation Appeal Board (WCAB) reversing the June 14, 2004, decision of a workers' compensation judge (WCJ) to grant Claimant's review petition and amend the description of Claimant's work-related injury. We reverse.

Claimant sustained work-related injuries on May 16, 1996, when he was involved in a motor vehicle accident while driving a tractor-trailer truck for G.O.D., Inc. (Employer). This case involves three decisions rendered by the same WCJ with respect to that work injury.[1]

In his first decision, circulated on August 14, 1998 (1998 Decision), the WCJ granted Claimant's claim petition and denied Employer's petition for a termination of benefits. Accepting the testimony of Claimant and his treating physician Mohammad Aslam, M.D., as credible, the WCJ made the following relevant finding.[2]

30. Claimant sustained the following conditions as a result of the May 16, 1996, injury:

(a) Sprained left ankle;

(b) Sprained low back; and

(c) A cervical strain

Dr. Aslam also mentioned this [sic] EMG findings showed inflammation of the fifth lumbar route.

*Reasoning:* Dr. Aslam's opinion that Claimant also sustained a disk *hernia-*

---

1. The records of the first two decisions were included as the WCJ's exhibits in the latest proceeding.

2. In the "procedural findings" portion of the 1998 Decision, the WCJ included the following.

> 7. NOTE REGARDING CREDIBILITY DETERMINATIONS AND SUMMARIZATION: Whenever citations to the record appear in the following Findings, that portion of the testimony located on the cited pages was, unless otherwise indicated or explained, found by this Workers' Compensation Judge to be legally competent, credible and persuasive, and more credible and more persuasive than the testimony of any other witness concerning the matters addressed in the cited portions of the record. The preceding paragraph of this note applies to only "hard" or "true" findings. In any of the following paragraphs which are summarization or recitation of evidence (containing such phrases as "the witness testified", "the witness stated", "the witness opined", or similar phrases indicating the reciting of testimony), citations to the record are included only to identify that portion of the record which is the basis of that particular summarization or recitation as contained in that paragraph.

(1998 Decision, WCJ's Findings of Fact, No. 7.) This same "finding" appeared in each of the three WCJ decisions involved here. (R.R. at 12–13, 41.) In the "substantive findings" portion of the 1998 Decision, the WCJ explained that the numbered paragraphs may include: (a) "hard" or "true" findings; (b) some summarization of evidence; (c) reasoning/discussion as deemed appropriate. Similar language is used in the WCJ's other two opinions. (R.R. at 13, 15, 41–42.)

tion at L4–L5 level ... as a result of the work injury was not found to be credible and persuasive due primarily to the Claimant's ability to continue to work. Dr. Aslam's opinion regarding *this aspect* of the Claimant's condition was found less credible and less persuasive than the contrary opinion of Dr. Yarus concerning the extent of Claimant's work injury. Furthermore, Dr. Aslam did not credibly and persuasively explain in medical terms how the work injury resulted in a disk *herniation* at L4–L5....

(1998 Decision, WCJ's Findings of Fact, No. 30) (emphasis added).

The WCJ concluded that Claimant sustained his burden of proving a compensable work-related injury and, rejecting the testimony of Employer's medical witness that Claimant recovered from that injury, the WCJ ordered Employer to pay Claimant total disability benefits from November 11, 1996, and partial disability upon Claimant's return to work for J.A. Strouse Auto Sales (Strouse).[3] Neither party appealed from the 1998 Decision.

In his second decision, circulated on August 13, 2002 (2002 Decision), the WCJ granted Claimant's reinstatement petition, which alleged that, as of August 28, 2001, he was no longer able to perform the work for Strouse and was again totally disabled. The WCJ also denied Employer's second termination petition.

In support of his reinstatement petition and in defending against Employer's termination petition, Claimant testified and presented the December 18, 2001, deposition testimony of a second treating physician, Robert W. Mauthe, M.D. Accepting the testimony of Claimant and Dr. Mauthe and rejecting the testimony of Employer's medical witness, the WCJ made the following relevant findings.

20. The Claimant continued to perform this job for Strouse despite having difficulties ... but *his condition has worsened* as of October 29, 2001.... Claimant's testimony concerning the *change in his condition* was not rebutted by any persuasive medical testimony....

. . .

34.... Dr. Mauthe had last seen the Claimant on August 17, 2001.... At that time, Dr. Mauthe diagnosed the Claimant with chronic pain syndrome and concluded that the Claimant was unable to participate in any form of regular sustained gainful employment.

. . .

36. On May 16, 1996, the Claimant sustained a sprained left ankle, cervical strain, and lumbar strain as a result of a motor vehicle accident during the course and scope of his employment.

37.... *the lumbar disc strain would best be described as an annular disruption at L4–5.*

38. Claimant is one of the approximately ten percent of patients with such injuries that does not get better.... This process becomes a chronic pain syndrome in which the ligaments are too weak to support the spine, causing an

---

3. Claimant continued to work for Employer following the May 16, 1996, injury, but he experienced difficulty performing his job because of pain and the medication he was taking. (1998 Decision, WCJ's Findings of Fact, No. 17.) Claimant was terminated by Employer on November 11, 1996, mainly, if not completely, due to his work injury. (1998 Decision, WCJ's Findings of Fact, Nos. 5, 19, 45.) Sometime thereafter, Claimant began working for Strouse. (1998 Decision, WCJ's Findings of Fact, No. 23.)

inability to bend, lift, or function in a productive fashion.[4]

39. As of August 17, 2001, it was no longer safe for the Claimant to perform the type of work which he had been performing at Strouse.

(2002 Decision, WCJ's Findings of Fact, Nos. 20, 34, 36–39) (emphasis added). The WCJ concluded that Claimant sustained his burden of proving that his work-related disability increased and that, as of August 28, 2001, he was again totally disabled as a result of his May 16, 1996, work injury. Accordingly, the WCJ denied Employer's termination petition and granted Claimant's reinstatement petition.

Employer appealed the 2002 Decision to the WCAB, specifically asserting that the WCJ erred in making Findings of Fact, Nos. 37 and 38. According to Employer, the WCJ was estopped under the doctrine of *res judicata* from redefining Claimant's original injury as a "disc injury" rather than the sprained low back described in the WCJ's 1998 Decision.

The WCAB disagreed that the WCJ redefined the original injury or allowed the nature of the injury to be relitigated. The WCAB concluded that Findings of Fact, No. 37 "merely summarized" the evidence presented by Dr. Mauthe and was not a "hard finding that Claimant's injuries extended beyond those injuries accepted by his 1998 Decision." [5] (WCAB's December

4. In making Findings of Fact, Nos. 36 to 38, the WCJ cites Dr. Mauthe's testimony at pages 11–13. When asked about his current diagnosis of Claimant's work injury, Dr. Mauthe testified as follows:

A ... I think that he initially had a sprained left ankle ... At this time I no longer see evidence of that. He developed a cervical strain ... [b]ut most significantly while he was diagnosed with a lumbar strain, initially the diagnosis has been changed to clearly being a lumbar disc problem with what I would describe as an annular disruption at L4–5.

Q *Incidentally, is an annular disruption, is that something that fits within the diagnosis of a lumbar strain?*

A *Yes, they're essentially the same.*

Q And can you tell us the mechanism of injury whereby the vehicular accident of 5/16/96 resulted in this lumbar strain sprain which [the WCJ] identifies in findings of fact, No 30 of his [1998 Decision] and which is in reality also an annular disruption?

A Well, *this is certainly not the same as a disc herniation.* ... The way the whole thing happened is that ... [t]he left side of his body was thrown into the door. And he developed low back pain.... Your body has a seat belt on.... When it's then struck from the side, a torsional force ... is transferred to the spine which then causes disruption in the muscles and ligaments and leads to these chronic conditions. ·

Q ... Why would an injury such as an annular disruption worsen to the extent as described by [Claimant]?

A I think in this particular case, he's one of those ten percent of patients that doesn't get better .... the spine develops this ligamentous laxity due to the original ligaments being stressed with the sprain strain ... and that develops into this chronic pain, inability to bend or · lift or function in a productive fashion.

(Mauthe's 12/18/01 dep. at 11–13) (emphasis added).

5. Although this WCAB decision is not before us on appeal, we note our disagreement with the WCAB's ruling on this issue. As described in footnote two of this opinion, the WCJ carefully explained the way that he would distinguish "hard" findings from mere summaries of testimony. Based on that explanation, there is no question that, in the 2002 Decision, the WCJ's Findings of Fact, Nos. 37 and 38 fall into the category of "hard" findings, not mere summaries.

We further note that if the WCJ had set forth his findings more clearly and concisely, i.e., "I find as fact that ...," the parties, the WCAB and this court would have been spared the task of interpreting the WCJ's numerous findings of fact. However, our observation is not intended to excuse the WCAB's failure to undertake that task.

10, 2003 op. at 6–7.) Accordingly, the WCAB affirmed the WCJ's decision and order. No further appeal was taken.

Subsequently, Employer filed a third termination petition alleging that Claimant was fully recovered from his work injury as of January 31, 2003. In addition to filing an answer denying these allegations, Claimant filed a review petition, which stated, "In an abundance of caution, this petition is for the purpose of making absolutely sure that the finding of [the WCJ] as to the nature of the injury is incorporated in the injury itself." [6] (R.R. at 1.)

In support of his review petition and in defense against the termination petition, Claimant again presented the testimony of Dr. Mauthe, who had been re-deposed on September 23, 2003. The WCJ accepted Dr. Mauthe's testimony as credible, rejected the contrary opinions of Employer's medical witness and made the following relevant findings:

> 24. On May 16, 1996, as a result of the auto accident, forces were transferred to the spine resulting in soft tissue injuries with the lumbar disc at L4–5 taking the brunt of the injury. This then resulted in an inflammatory cascade such that the cellular elements are sent to the site of the injury to try to attempt healing. Ninety percent of the time the injury heals. The May 16, 1996, injury was basically a soft tissue injury.

> . . .

> 24(c). Dr. Mauthe is of the opinion that on May 16, 1996, the Claimant did not suffer a herniation or any kind of nerve impingement but sustained "basically a soft tissue injury."

> 24(d). On May 16, 1996, the Claimant sustained an anular [sic] disruption at L4–5.... The explanation by Dr. Mauthe of Claimant's condition subsequent to the May 16, 1996 injury and its relationship with the mechanics of the accident is persuasive.[7]

---

**6.** In a letter to the WCJ, dated February 26, 2004, counsel for Claimant states that "Claimant filed a Review Petition essentially seeking clarification of the finding of fact as it relates to the description of the work injury." (O.R.)

**7.** In makings Findings of Fact, No. 24(c) and (d), the WCJ cited portions of Dr. Mauthe's December 18, 2001, deposition, as set forth in the WCJ's 2002 Decision and quoted in footnote four of this opinion, as well as Dr. Mauthe's September 23, 2003, deposition, in which the following similar testimony was presented.

Q. What is his injury of 5/16/96?
A. [Claimant] was initially involved in a traumatic motor vehicle accident, ... suffered the onset of back pain. His MRI has revealed an abnormal disc at L4–5 described as an annular disruption.... [H]e was referred to me for non-surgical rehabilitation of lumbar spine pain which could best be described as a chronic sprain and annular disruption at L4–5.
Q Doctor, what is the mechanism by which he suffered this annular tear?
A The lumbar discs serve as the shock absorbers of the spine. In terms of the trauma, there's a force transferred from the vehicles.... In this particular case, they resulted in soft tissue injuries with the lumbar disc at the L4–5 taking the brunt of the injury. This then results in an inflammatory cascade such that the cellular elements are sent to the site of the injury to try to attempt healing. 90 percent of the time, these injuries heal. *Mr. Knouse did not suffer a herniation or any kind of nerve impingement. This is basically a soft tissue injury.* ... In Mr. Knouse's particular condition, he developed what is called a chronic pain syndrome. That is to say, he's approximately in the ten percent that don't resolve. These people then developed chronic back pain.
(Mauthe 9/23/03 dep. at 11–12) (emphasis added).

. . .

27. In the [1998 Decision, the WCJ] found that on May 16, 1996, Claimant sustained the following conditions: (a) sprained left ankle; (b) sprained low back; and (c) a cervical strain.

. . .

31. The totality of the evidence in this case as well as in the previous findings in prior decisions are consistent with the opinion of Dr. Mauthe that the Claimant's current symptoms are, at least in part, related to the May 16, 1996, work injury which included an "anular [sic] disruption at L4–5."

. . .

54. It was not until the Claimant filed the Review Petition . . . that the Claimant sought to have the injuries described in the [1998 Decision] amended to include any other specific injury other than those as described in [the 1998] Decision in the manner indicated in Finding 27 above.

55. The sprained low back which the Claimant sustained on May 16, 1996, included an "anular [sic] disruption at

L4–5" in addition to the injuries as described in the [1998 Decision].

(2004 Decision, WCJ's Findings of Fact, Nos. 24, 24(c), 24(d), 31, 54, 55.)

Based on these findings, the WCJ issued a decision (2004 Decision) in which he denied Employer's termination petition and granted Claimant's review petition, concluding that Claimant met his burden of proof under section 413(a) of the Workers' Compensation Act (Act).[8] (2004 Decision, WCJ's Conclusions of Law, Nos. 2–4.)

Employer appealed to the WCAB, arguing that the WCJ was prohibited by the doctrine of *res judicata*/ collateral estoppel from modifying Claimant's injury to include an "annular disruption at L4–5." The WCAB agreed, reasoning that

> The [WCJ] determined in the 1998 Decision that Claimant sustained a sprained left ankle, a sprained low back, and a cervical strain. The [WCJ] also rejected in the same Decision testimony that Claimant sustained a disc *herniation* at the L4–L5 level as a result of the work injury. . . . [Employer] is correct that the [WCJ] was precluded from determining that Claimant sustained an annular disruption at the L4–L5 disc at the time of the work injury. . . . In the 1998

---

**8.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 771–773. The first paragraph of section 413(a) permits a WCJ at any time to review and modify or set aside a notice of compensation payable or an agreement for compensation "if it be proved that such notice of compensation payable or agreement was in any *material respect incorrect.*" 77 P.S. § 771. The second paragraph permits a WCJ at any time to modify, reinstate, suspend or terminate a notice of compensation payable, an agreement, or an award upon proof of a change in disability of the injured employee. 77 P.S. § 772. Here, the WCJ held that Claimant had satisfied both the first and second paragraphs of section 413(a), concluding as follows:

> 2. Claimant has met his burden of proving that the description of the injury as set forth

in the [1998 Decision] contained a material mistake at the time the decision was issued. The Claimant established by credible and persuasive evidence that that material mistake was the failure to include an "annular disruption at L4–5" in the description of the injury as set forth in Finding 30 of that Decision and in paragraph 1 of the Order.

> 3. Claimant has met his burden of proving that the description of the injury as set forth in the [1998 Decision] should be amended. The credible and persuasive evidence establishes that Claimant's disability had increased by virtue of the fact that the original injury was more extensive than a "sprained low back" but instead also included an "anular [sic] disruption at L4–5."

(2004 Decision, WCJ's Conclusions of Law, Nos. 2–3.)

Decision, the nature of Claimant's work injury was litigated; specifically, the issue of whether Claimant sustained an injury to his L4–L5 disc was addressed. A final judgment excluding an L4–L5 disc *herniation* was entered when the [WCJ] issued the 1998 Decision and Order, and Claimant did not appeal.... Claimant cannot subsequently bring a Review Petition alleging that the description of his work injury should include an annulated disc at the L4–L5 disc, as it is barred under the doctrine of res judicata.

(WCAB's May 9, 2005, op. at 4–5) (emphasis added). Accordingly, the WCAB reversed the WCJ's decision granting Claimant's review petition. Claimant now petitions this court for review of the WCAB's order.[9]

 Claimant argues that the WCAB clearly erred in holding that the principles of *res judicata* and/or collateral estoppel apply in this matter.[10] We agree. The WCAB evidently based its decision on the fact that the issue of whether Claimant sustained a "disc herniation" had already been fully litigated and decided in the 1998 Decision, which was not appealed. (WCAB's May 9, 2005, op. at 4–5.) However, the WCAB's decision reflects that the WCAB misunderstood "disc herniation" at L4–5 and "annular disruption" at L4–5 to be the same condition. To the contrary, Dr. Mauthe, whose testimony was credited by the WCJ, clearly distinguished the two conditions in both his de-

positions, and *the WCJ made specific findings to that effect.*

In his 1998 Decision, the WCJ found that, as a result of the 1996 injury, Claimant suffered a sprained left ankle, sprained low back and a cervical strain. (1998 Decision, WCJ's Findings of Fact, No. 30.) During the subsequent proceedings, Dr. Mauthe explained that a sprained low back *can be described as an annular disruption* and *is not a herniation.* (12/18/01 dep. at 11–12; 9/23/03 dep. at 11–13.) Like the WCJ, we conclude that Dr. Mauthe's testimony adequately addressed the work injury as found by the WCJ in the 1998 Decision, and we see no contradiction between Dr. Mauthe's diagnosis and the 1998 finding by the WCJ that Claimant suffered a sprained low back as a result of his 1996 accident. Accordingly, Employer's assertion that the WCJ's 2004 Decision finding that Claimant suffers from an annular disruption at L4–L5 relitigates Claimant's work injury is without merit. To the contrary, in granting Claimant's review petition by including the annular disruption at L4–5 into the description of Claimant's work injury, the WCJ *merely clarified* what already had been litigated. Because Dr. Mauthe's credible testimony established that Claimant's annular disruption at L4–5 *was part of his 1996 work-related low back strain,* the evidence accepted supports such clarification, and we see no error in the WCJ's taking this action. Significantly, such clarification is exactly what Claimant sought by filing his review petition.

---

9. Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

10. Technical *res judicata* provides that, when a final judgment on the merits exists, a future

suit between the parties on the same cause of action is precluded. *Maranc v. Workers' Compensation Appeal Board (Bienenfeld),* 751 A.2d 1196 (Pa.Cmwlth.2000). The principle of collateral estoppel acts to foreclose litigation in a later action of issues of law or fact that were actually litigated and necessary to a previous final judgment. *Id.*

Employer correctly notes that the first paragraph of section 413(a) of the Act, 77 P.S. § 771, cited by Claimant in his review petition, does not apply to WCJ awards, but is reserved only to correct material mistakes in Notices of Compensation Payable or agreements for compensation, except in limited instances not applicable here. We also recognize that, ordinarily, the second paragraph of section 413(a) of the Act, 77 P.S. § 772, applies to grant a claimant relief only where there has been an increase either in the claimant's disability, i.e., loss of earning power, or in the extent or severity of his injuries.[11] In this case, Claimant already had established a worsening of his condition in the 2002 Decision, where the WCJ granted reinstatement of total disability benefits. In the present review petition proceeding, Claimant did not and, in fact, could not allege any further increase in disability, and Claimant did not allege that his annular disruption at L4–5 represents a subsequent worsening of his original low back strain. Instead, utilizing a review petition, Claimant merely sought clarification of the WCJ's findings in the 2002 Decision that the work-related low back strain suffered in 1996 "could best be described as" an annular disruption.

██ The filing of a review petition has been identified as the proper procedure for obtaining clarification of an employer's obligations under a WCJ's award, *see Department of Public Welfare v. Workers' Compensation Appeal Board (Overton)*, 783 A.2d 358 (Pa.Cmwlth.2001), and we see no reason why it may not also be used as a means to clarify a claimant's rights under a WCJ's award.

Because the 2004 Decision does no more than clarify the description of Claimant's

1996 injury, we do not see the WCJ's 2004 Decision as having any practical effect on Claimant's benefits. Nevertheless, because the WCAB erred in concluding that *res judicata*/collateral estoppel barred Claimant's review petition, that decision must be reversed. Moreover, to the extent that the WCAB's erroneous interpretation of the WCJ's findings may adversely affect Claimant's entitlement to future benefits, we conclude that the remedial purpose of the Act is best served by reversing the WCAB's decision.

Accordingly, we reverse.

## ORDER

AND NOW, this 7th day of November, 2005, the order of the Workers' Compensation Appeal Board, dated May 9, 2005, is hereby reversed.

---

11. *See Jeanes Hospital v. Workers' Compensation Appeal Board (Hass)*, 582 Pa. 405, 872

A.2d 159 (2005).