# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Tobin, :
               Petitioner :
                         :
        v. : No. 974 C.D. 2018
                         : Submitted: November 2, 2018
Workers' Compensation Appeal :
Board (Upper Darby Township), :
               Respondent :


BEFORE:  HONORABLE ROBERT SIMPSON, Judge
              HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE ELLEN CEISLER, Judge


*OPINION NOT REPORTED*


**MEMORANDUM OPINION**
**BY JUDGE BROBSON**          **FILED: May 31, 2019**


Petitioner William Tobin (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board), dated June 26, 2018. The Board affirmed an order of Workers' Compensation Judge Kathleen DiLorenzo (WCJ DiLorenzo), granting the termination petition (Termination Petition) filed by Upper Darby Township (Employer) and denying Claimant's review petition (Review Petition). We now vacate and remand the matter to the Board.

Claimant worked for Employer as a police officer. (Reproduced Record (R.R.) at 47a.) On June 13, 2012, Claimant sustained a work-related injury in the nature of a lumbosacral sprain/strain along with a contusion of the right knee. (*Id.*) Employer accepted liability for Claimant's work-related injury by issuing a

notice of temporary compensation payable, which subsequently converted to a notice of compensation payable (NCP) by operation of law. (*Id.* at 47a.) On April 19, 2013, Employer filed a petition to terminate benefits, alleging that Claimant had fully recovered from his work-related injury as of January 31, 2013. (*Id.*) By order dated June 16, 2014, Workers' Compensation Judge Joseph Stokes (WCJ Stokes) denied Employer's petition, concluding that Employer failed to meet its burden of proving that Claimant had fully recovered from his work-related injury as of January 31, 2013. (*Id.* at 49a-50a.) Employer appealed WCJ Stokes's decision to the Board, asking the Board to clarify that WCJ Stokes made no ruling on the permanence of Claimant's work-related injury. (*Id.* at 53a.) The Board affirmed WCJ Stokes's decision, concluding that Employer did not raise an appealable issue because matters related to permanence "are not at issue in a termination petition beyond any relevance to a claimant's full recovery." (*Id.* at 54a.)

Thereafter, on June 2, 2016, Employer filed its Termination Petition, alleging that Claimant had fully recovered from his work-related injury as of May 24, 2016. (*Id.* at 261a.) On October 18, 2016, Claimant filed his Review Petition, seeking to amend the description of his work-related injury in the NCP, because his work-related injury was later diagnosed as more serious than "a contusion and abrasion to [his] knees and back." (*Id.*)

Claimant testified before WCJ DiLorenzo at the hearing held on July 13, 2016. (*Id.* at 64a.) At that time, Claimant testified that he injured his right knee and low back on June 13, 2012, while working for Employer. (*Id.*) Claimant explained that, in the six-to-seven months prior to the hearing, the treatment for his work-related injury included spinal injections and physical therapy. (*Id.* at 65a-66a.) Claimant explained further that he continues to experience a lack of strength in his

2

knees, difficulty lifting things, an inability to stand for long periods, an inability to sit for long periods, an inability to run or walk long distances, difficulty sleeping, constant pain, low back stiffness, and general discomfort. (*Id*. at 67a-70a.) As a result, Claimant did not believe that he has fully recovered from his work-related injury. (*Id*. at 70a-71a.)

Claimant also presented the deposition testimony of James F. Bonner, M.D., who is board certified in physical medicine and rehabilitation.[1] (*Id.* at 9a.) Dr. Bonner testified that Claimant first consulted with him concerning the work-related injury on June 18, 2012. (*Id*. at 9a.) At that time, Dr. Bonner diagnosed Claimant with a lumbar sprain/strain and a right knee contusion strain and prescribed a course of treatment for Claimant. (*Id*. at 9a-10a.) Dr. Bonner examined Claimant again on January 16, 2013. (*Id.* at 10a.) At that time, Dr. Bonner made a number of additional findings concerning Claimant's condition, including: (1) Claimant suffered chronic and ongoing pain; (2) an MRI of Claimant's lumbar spine showed an L4-L5 annular tear, a bulging disc, and some degenerative changes; and (3) an MRI of Claimant's right knee showed some evidence of effusion—*i.e.*, water on the knee—and a contusion. (*Id*. at 10a-11a.) Based on his findings with respect to Claimant's lumbar spine, Dr. Bonner referred Claimant to Michael Stanley, M.D., a neurologist, who determined that the annular tear was consistent with an acute injury and a right-sided disc herniation. (*Id*. at 11a-15a.) With respect to the injury to Claimant's right knee, Dr. Bonner referred Claimant to William Emper, M.D., an orthopedic surgeon who, based on Claimant's complaints of pain, administered three

---

[1] The parties agreed that, rather than duplicating efforts from the previously litigated termination petition, Dr. Bonner's deposition testimony from January 29, 2014, in the proceedings before WCJ Stokes would be submitted into evidence along with his updated deposition testimony from April 5, 2017. In this opinion, we will discuss both of Dr. Bonner's deposition testimonies together.

injections to Claimant's right knee. (*Id.*) Dr. Bonner testified further that as of the date of his January 16, 2013 examination of Claimant, he restricted Claimant from performing full-time police duty and continued Claimant's prescriptions for pain and inflammation medication and outpatient physical therapy. (*Id.* at 11a-12a.) Thereafter, Claimant continued to treat with Dr. Bonner for his lumbar spine and right knee injuries through the date of Dr. Bonner's April 5, 2017 deposition. (*Id.* at 16a-24a, 134a-42a.) Throughout the course of his treatment of Claimant, Dr. Bonner has restricted Claimant from returning to full-time police work and has prescribed outpatient physical therapy and lumbar injections. (*Id.* at 16a-24a, 134a-36a.)

When questioned about whether Claimant is capable of returning to full-time police duties, Dr. Bonner testified that his opinion remains unchanged— *i.e.*, Claimant could not perform full-time, unrestricted, police duty because his significant physical impairments preclude him from performing the essential duties of a police officer. (*Id.* at 136a-40a.) Dr. Bonner opined that Claimant's injuries are permanent, and Claimant will require ongoing treatment in the form of medications and injections. (*Id.* at 139a-41a.) Dr. Bonner further testified that he disagreed with Dr. McHugh's[2] medical opinion that Claimant had fully recovered from his right knee contusion and lumbar sprain/strain and could return to full-duty work as a police officer. (*Id.* at 143a-49a.) Instead, Dr. Bonner opined that Claimant: (1) had sustained, in addition to a lumbar sprain/strain and a right knee contusion, a herniated disc at L5-S1, an annular tear at L5-S1 and L4-L5, an aggravation of a preexisting right knee injury, and degenerative arthritis in his right knee; (2) required

---

[2] Dennis P. McHugh, D.O., is an orthopedic surgeon who testified on Employer's behalf, as to whether, in his medical opinion, Claimant had fully recovered from his work-related injuries. (*See* R.R. at 88a-89a.)

4

further treatment for his work-related injuries; and (3) was not capable of returning to full-duty police work without restrictions. (*Id.* at 144a-50a.)

Employer presented the deposition testimony of Dr. McHugh, who performed an independent medical examination of Claimant with respect to the injury to Claimant's right knee on March 17, 2016. (*Id.* at 89a-90a.) Upon physical examination of Claimant's right knee, Dr. McHugh found: (1) Claimant could fully extend the knee; (2) there was no increase of fluid in the knee; (3) there was no increased warmth or redness in the knee; (4) the knee was neutrally aligned and the kneecap was stable; and (5) the kneecap did not grind when it went through an arc of motion but tracked normally. (*Id.* at 90a.) Dr. McHugh noticed, however, that when he pushed on Claimant's right kneecap, Claimant experienced some discomfort. (*Id.*) Further, Claimant experienced pain over the lateral joint line during palpitation of the knee at 90 degrees. (*Id.*) Otherwise, Claimant had a normal gait—*i.e.*, a heel strike and follow through without a limp. (*Id.* at 90a-91a.) Based upon his review of Claimant's medical records, the history he obtained from Claimant, and his physical examination, Dr. McHugh opined that Claimant had fully recovered from the work-related right knee contusion as of the date of his independent medical examination. (*Id.*)

Dr. McHugh performed a second independent medical examination of Claimant relative to Claimant's low back injury on May 24, 2016. (*Id.*) Dr. McHugh's physical examination of Claimant's low back revealed: (1) no palpable spasms in the muscle tissue of the low back; (2) generalized and nonspecific pain over both sacroiliac notches and both sciatic notches; (3) tightness with forward flexion at 80 degrees; (4) no pain upon extension; (5) normal side bending and rotation; and (6) normal sensation and strength. (*Id.* at 92a.) Based upon his review

5

of Claimant's medical records (including the MRI and EMG findings) and his physical examination, Dr. McHugh opined that Claimant had fully recovered from his lumbosacral sprain/strain as of the date of his independent medical examination, required no further treatment, and could return to full-duty work without restrictions. (*Id*. at 92a-93a.) Dr. McHugh further testified that he did not discover any evidence that Claimant had sustained an acute disc injury at L4-L5 or L5-S1 or an annular tear as a result of his June 13, 2012 work-related injury. (*Id*. at 93a.)

By decision and order dated June 12, 2017, WCJ DiLorenzo granted Employer's Termination Petition and denied Claimant's Review Petition. In doing so, WCJ DiLorenzo summarized the witnesses' testimony and made the following credibility determinations:

> 4. Claimant is credible to an extent, specifically about the occurrence of the work injury, and isn't credible with respect to the alleged extent of the work injuries. Drs. McHugh and Lubeck[3] are more credible and persuasive than Dr. Bonner for several reasons, to wit: 1.) Dr. McHugh, with a board certification in orthopedic surgery, has better qualifications than Dr. Bonner, with a board certification in physical medicine and rehabilitation, for the determination and existence of alleged orthopedic injuries as those of . . . Claimant; 2.) Dr. Lubeck, as a board certified electromyographer, has better qualifications than Dr. Bonner, with a board certification in physical medicine and rehabilitation, for the analyzation of electromyograms and nerve conduction studies and determination of alleged conditions on the basis of the aforesaid test findings; 3.) Dr. McHugh's examinations of . . . Claimant were more comprehensive than the

---

[3] Joseph S. Lubeck, D.O., is a medical doctor who is board certified in electromyography. (R.R. at 212a.) Employer presented deposition testimony of Dr. Lubeck, who was only asked to review Claimant's medical records and issue a report based on his findings. (*Id*.) Dr. Lubeck did not perform a physical examination of Claimant, and, therefore, had no medical opinion as to whether Claimant had fully recovered from his work-related injury. (*Id*. at 230a-31a.)

6

described examinations by Dr. Bonner with Dr. McHugh's performance of a myriad of tests of . . . Claimant and without the performance of the same tests by Dr. Bonner; 4.) The opinions of Drs. McHugh and Lubeck are supported by the clinical examination results and objective findings on the diagnostic tests of . . . Claimant; 5.) Drs. McHugh and Lubeck gave rational explanations for their opinions on the bases of objective findings; [and] 6.) Dr. McHugh's testimony established Dr. McHugh's extensive review of medical records with regard to . . . Claimant in contrast to Dr. Bonner, with no testimony with respect to Dr. Bonner's review of the same reviewed records as those by Dr. McHugh.

(WCJ DiLorenzo Decision at 4.)  Based on these credibility determinations, WCJ DiLorenzo concluded that Employer met its burden of proving that Claimant had fully recovered from his work-related injury as of May 24, 2016.  (*Id*. at 18.)  WCJ DiLorenzo further concluded:  (1) Claimant did not meet his burden of proving that there was a material mistake in the NCP concerning the description of his work-related injury; and (2) Claimant was otherwise precluded from litigating this issue—*i.e.*, the description of the work-related injury—under the doctrines of collateral estoppel and res judicata because the issue was fully litigated before WCJ Stokes during the prior petition to terminate benefits.  (*Id*.)  Claimant appealed WCJ DiLorenzo's decision to the Board, which affirmed.  Claimant now petitions this Court for review.

On appeal,[4] Claimant argues that the Board erroneously affirmed WCJ DiLorenzo's decision because WCJ DiLorenzo committed an error of law when she denied Claimant's Review Petition on the basis of res judicata.  Claimant also

---

[4] This Court's review is limited to a determination of whether an error of law was committed, whether findings of fact are supported by substantial evidence, or whether constitutional rights were violated.  Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

7

contends that the Board committed an error of law by affirming WCJ DiLorenzo's decision granting Employer's Termination Petition because WCJ DiLorenzo failed to address the full extent of the work-related injury as it was implicitly redefined in previous litigation before WCJ Stokes.[5]

As to the Review Petition, Claimant argues that WCJ DiLorenzo's decision to deny Claimant's Review Petition on the basis of res judicata is erroneous as a matter of law. Specifically, Claimant argues that he filed the Review Petition in order to clarify WCJ Stokes's supposed amendment of the work-related injury and that, pursuant to this Court's decision in *Knouse v. Workers' Compensation Appeal Board (G.O.D., Inc.)*, 886 A.2d 329 (Pa. Cmwlth. 2005), such a request is not barred by res judicata or collateral estoppel. In response, Employer contends that there is substantial evidence of record to support WCJ DiLorenzo's decision to deny the Review Petition.

When a party files a review petition seeking to modify or amend an incorrect description of a work-related injury in an NCP, the burden is on the party seeking modification to prove that "a material mistake of fact or law was made at the time the NCP was issued or that the injury has changed." *ESAB Welding & Cutting Products v. Workers' Comp. Appeal Bd. (Wallen)*, 978 A.2d 399, 404 (Pa. Cmwlth. 2009), *appeal denied*, 991 A.2d 314 (Pa. 2010).

In workers' compensation proceedings, the WCJ is the ultimate finder of fact. *Williams v. Workers' Comp. Appeal Bd.* (*USX Corp.-Fairless Works*), 862 A.2d 137, 143 (Pa. Cmwlth. 2004). As factfinder, matters of credibility, conflicting medical evidence, and evidentiary weight are within the WCJ's exclusive

---

[5] For purposes of our analysis, we have reversed the order of Claimant's arguments on appeal.

province. *Id.* In determining whether the WCJ's findings are supported by substantial evidence, we may not reweigh the evidence or the credibility of the witnesses but must simply determine whether the WCJ's findings have the requisite measure of support in the record as a whole. *Elk Mountain Ski Resort, Inc. v. Workers' Comp. Appeal Bd. (Tietz, deceased)*, 114 A.3d 27, 32 n.5 (Pa. Cmwlth. 2015). It is irrelevant whether there is evidence to support a contrary finding; if substantial evidence supports the WCJ's necessary findings, we may not disturb those findings on appeal. *Williams*, 862 A.2d at 143-44.

The doctrine of res judicata incorporates two distinct principles of preclusion—collateral estoppel and technical res judicata. *Henion v. Workers' Comp. Appeal Bd. (Firpo & Sons, Inc.)*, 776 A.2d 362, 365 (Pa. Cmwlth. 2001). Both principles apply to prevent re-litigation of claims and issues. *Weney v. Workers' Comp. Appeal Bd. (Mac Sprinkler Systems, Inc.)*, 960 A.2d 949, 954 (Pa. Cmwlth. 2008), *appeal denied*, 971 A.2d 494 (Pa. 2009). Parties will be barred from re-litigating claims if technical res judicata, also known as claim preclusion, applies. *Firpo & Sons, Inc.*, 776 A.2d at 365. Technical res judicata is found where there is: "(1) identity of the thing sued upon or for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued." *Mac Sprinkler Systems, Inc.*, 960 A.2d at 954. Where collateral estoppel, also known as issue preclusion, applies, parties are barred from re-litigating issues. *Pucci v. Workers' Comp. Appeal Board (Woodville State Hosp.)*, 707 A.2d 646, 647-48 (Pa. Cmwlth. 1998). Collateral estoppel is found where: "(1) the issue decided in the prior case is identical to the one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the doctrine is asserted was a party or in privity with a party in

the prior case and had a full and fair opportunity to litigate the issue; and (4) the determination in the prior proceeding was essential to the judgment." *Id*. at 648.

At the outset we note that *G.O.D., Inc.* is not applicable to the situation before us. In *G.O.D., Inc.*, a claimant sustained work-related injuries as a result of being involved in a vehicular accident. The same WCJ ultimately issued a number of decisions concerning the work-related injury.

In the WCJ's first decision, he granted the claimant's claim petition and denied the employer's termination petition by accepting medical testimony concluding that the claimant sustained a sprained left ankle and low back and a cervical strain. In this first decision, the WCJ also found that medical testimony concluding that the claimant suffered a disc herniation was not persuasive. In his second decision, the WCJ granted the claimant's reinstatement petition and denied the employer's second termination petition. In support of the claimant's reinstatement petition, the claimant presented the deposition testimony of his second treating physician who opined that the claimant's condition had worsened and that his lumbar disc strain was an annular disruption. The treating physician also explained that a sprained low back can be described as an annular disruption and is not a disc herniation. The WCJ found the treating physician's medical testimony persuasive and, therefore, clarified the description of the injury by making specific findings of fact as to the presence of an annular disruption as part of the low back sprain. The employer appealed the WCJ's decision to the Board, which concluded that the WCJ was precluded from amending the description of the injury because the parties previously litigated that issue.

On appeal to this Court, we determined that the WCJ merely clarified the description of the work-related injury as it was described in his first decision—

10

*i.e.*, among other injuries, a low back sprain that did not include a disc herniation. *G.O.D., Inc.*, 886 A.2d at 335. The WCJ was, therefore, not precluded from clarifying the description of the work-related injury by the doctrine of res judicata. *Id.*

Contrary to Claimant's belief, our decision in *G.O.D., Inc.* does not stand for the proposition that res judicata does not bar attempts by claimants to clarify the description of their work-related injuries. Instead, we concluded that where an injury description has been defined by previous litigation, a WCJ may clarify—and not modify—said description in later litigation. Here, there has not been a clarification of the description of Claimant's work-related injury because that issue has never been litigated. Claimant argues that the following statement by WCJ Stokes amended the description of the work-related injury: "Dr. Bonner noted that . . . an MRI had been performed that showed an L4-[L]5 annular tear with bulging disc and a herniated disc at L5-S1[.]" (R.R. at 49a; Finding of Fact (F.F.) No. 8.) The quoted statement, however, is merely a re-iteration of Dr. Bonner's medical testimony. WCJ Stokes credited Dr. Bonner's testimony but did not adopt any other definition of the work-related injury; rather, he simply found Dr. Bonner credible and convincing in that Claimant had not recovered from his work-related injury. (R.R. at 49a; F.F. No. 10 ("Dr. James Bonner is credible and convincing that Claimant remains disabled from employment as it relates to his employment incident of June 13, 2012.").)

Further, the claim before WCJ Stokes was a termination petition, which merely required a determination as to whether Claimant was fully recovered from the work-related injury as it was described in the NCP. WCJ Stokes's determination did not require him to consider whether the description of the work-related injury

11

should be amended, and he did not do so. Accordingly, the description of the work-related injury was never amended or clarified and has, therefore, not been litigated. Consequently, we agree that WCJ DiLorenzo committed an error of law by concluding that Claimant was precluded from relief by the doctrines of technical res judicata and/or collateral estoppel because the issue concerning the description of Claimant's work-related injury was never before WCJ Stokes.

Next we address Claimant's contention that the Board committed an error of law by affirming WCJ DiLorenzo's decision granting Employer's Termination Petition because WCJ DiLorenzo failed to address the full extent of the work-related injury as it was implicitly redefined in previous litigation before WCJ Stokes. In response, Employer contends that there is substantial evidence of record to support WCJ DiLorenzo's decision to grant Employer's Termination Petition.

Based on our discussion above, however, it is clear that WCJ DiLorenzo limited her consideration of whether Claimant fully recovered from his work-related injury to the initial description of Claimant's injury due to her mistaken belief that she was precluded from considering whether the description should be amended. Both petitions must be resolved anew, and a remand is in order.

On remand, WCJ DiLorenzo should consider Claimant's Review Petition in light of the fact that the description of Claimant's work-related injury has not been litigated and determine the proper description of the work-related injury before ruling on Employer's Termination Petition.

12

Accordingly, we vacate the Board's order and remand this matter to the Board with instruction that it remand the matter to WCJ DiLorenzo for the issuance of a new decision and order in accordance with this opinion.

_____
P. KEVIN BROBSON, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Tobin,                                    :
                          Petitioner              :
                                                  :
           v.                                     :     No. 974 C.D. 2018
                                                  :
Workers' Compensation Appeal                      :
Board (Upper Darby Township),                     :
                          Respondent              :

# **O R D E R**

AND NOW, this 31st day of May, 2019, the order of the Workers' Compensation Appeal Board is VACATED and the matter is REMANDED to the Board with instruction that it remand the matter to the Workers' Compensation Judge for the issuance of new findings of fact and conclusions of law.

Jurisdiction relinquished.

_____
P. KEVIN BROBSON, Judge