J-A15006-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THOMAS EDWARD FORNWALD | : | |
| | : | |
| Appellant | : | No. 1408 MDA 2023 |

Appeal from the Judgment of Sentence Entered September 28, 2023
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0001620-2019

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THOMAS EDWARD FORNWALD | : | |
| | : | |
| Appellant | : | No. 1409 MDA 2023 |

Appeal from the Judgment of Sentence Entered September 28, 2023
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0001395-2021

BEFORE:  DUBOW, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:          **FILED: JULY 11, 2024**

Appellant, Thomas Edward Fornwald, appeals from the September 28, 2023 judgment of sentence of life imprisonment entered in the Dauphin County Court of Common Pleas following his jury conviction of three counts each of Corruption of Minors ("COM"), Unlawful Contact with a Minor, and

---

[*] Former Justice specially assigned to the Superior Court.

Indecent Assault of a Child Under 13 Years of Age, and two counts of Indecent Assault without Consent. Appellant challenges the trial court's denial of his requests for a mistrial and the admission of certain Pa.R.E. 404(b) evidence. After careful review, we affirm.

The relevant facts and procedural history are as follows. On March 5, 2019, and February 1, 2021, the Commonwealth charged Appellant at two separate dockets with the above offenses after three minor female victims, C.D., J.S., and S.M., who were friends with Appellant's daughters, reported that, while visiting Appellant's home, Appellant touched their breasts.

C.D. alleged that when she was at Appellant's home, Appellant wrapped his arms around her waist from behind, lifted her off her feet into a bear hug, and squeezed her breasts with his hands. She reported that Appellant stated to her after the fact that "he didn't know she had a body like that" and if she didn't mind, he would "do it again." Motion *in Limine*, 4/12/23, at ¶ 3. J.S. reported that while she was visiting Appellant's daughters, Appellant made sexual comments to her and, on one occasion, Appellant pulled up J.S.'s shirt to look at her chest. J.S. also alleged that on another occasion, Appellant put his hand inside of her shirt and touched her breast. S.M. claimed that when she was at Appellant's home playing hide and seek with his daughter, Appellant suggested that S.M. hide under a blanket he had over his lap. While under the blanket, Appellant reached his hand into S.M.'s shirt and touched her breast. The girls were all between the ages of 11 and 13 at the time of these incidents.

- 2 -

Appellant had prior convictions of Rape of an adult victim and Indecent Assault and COM of a minor victim, L.K. On April 12, 2023, the Commonwealth filed a motion *in limine* to admit as evidence at trial the fact of Appellant's prior conviction of crimes against L.K. and L.K.'s testimony regarding Appellant's assault of her.[1, 2] In particular, the Commonwealth, sought permission to introduce evidence that, in 2003, when then-12 year old L.K. was at Appellant's home to babysit Appellant's daughters, he twice sexually assaulted her, once by falling onto her from behind and grabbing and squeezing her breasts and vagina over her clothing and on another occasion by again falling onto L.K. from behind and reaching around her to grab and squeeze her breasts with both hands over her clothing. The Commonwealth argued that this evidence was admissible pursuant to Rule 404(b) to show that Appellant acted with the requisite intent and that his actions were not a mistake or accident. In support of this argument, the Commonwealth noted that the assaults of L.K. were highly similar to the allegations of C.D., J.S., and S.M in that each instance involved female minors between 11 and 13 years of age who were present in Appellant's home to see his children and, in three of four of them, involved Appellant fondling the girls' breasts from

---

[1] With respect to the assault of L.K., in December 2004, Appellant entered a guilty plea to two counts each of Indecent Assault of a Child Less than 13 Years of Age and COM. One year later, the trial court sentenced Appellant to 9 to 23 months in the Dauphin County Work Release Center with two years of consecutive probation.

[2] L.K. was 32 years old at the time of trial.

- 3 -

behind. On April 20, 2023, the trial court granted the Commonwealth's motion *in limine* to admit L.K.'s testimony.[3]

Appellant's three-day jury trial commenced on April 24, 2023. At the commencement of trial, the parties placed on the record their agreement that the Commonwealth would redact from S.M.'s and C.D.'s forensic interviews statements that those victims knew that Appellant had been in jail previously and from J.S.'s forensic interview that she believed that Appellant had a prior Rape conviction.

Appellant also made an oral motion *in limine* to preclude C.M. from testifying that, subsequent to C.M. reporting Appellant's abuse, she saw Appellant at her school and in Walmart, where it appeared that Appellant was following or stalking her. Appellant argued that this testimony constituted Rule 404(b) evidence the presentation of which the Commonwealth was required to, but did not, provide Appellant advance written notice. He also argued that Appellant had been at C.M.'s school for his own child's parent-teacher conference and that his presence at Walmart at the same time as C.M. was merely coincidental. The Commonwealth objected to this request, arguing that C.M.'s perception that Appellant was following or stalking her is admissible, non-Rule 404(b) evidence, that did not require advance notice to

_____

[3] The parties further litigated this issue at trial when Appellant moved to preclude the Commonwealth from admitting evidence of Appellant's guilty plea and conviction of the charges arising from his assault of L.K. The trial court granted the Commonwealth's motion and permitted it to admit evidence that Appellant had pleaded guilty to charges related to L.K. N.T. Trial, 4/24-26/23, at 242-43.

Appellant. The trial court agreed with Appellant that this constituted Rule 404(b) evidence that required notice and, thus, granted his motion *in limine*.

The Commonwealth presented the testimony of numerous witnesses, including the victims and L.K. who each testified consistent with the above facts.[4] The Commonwealth also played the videorecorded forensic interview of C.D. conducted by the Children's Resource Center ("CRC") and distributed a copy of the transcript of the interview to the jury so it could follow along. The Commonwealth noted that it and Appellant had agreed that certain portions of the recording were not relevant to the case and it, therefore, purported to omit those portions from the video playback to the jury. However, following presentation of the video to the jury, Appellant objected, arguing that the Commonwealth violated the court's ruling on Appellant's motion *in limine* when video played to the jury contained C.D.'s statement that Appellant "was showing up at the school, following her to Wal[]mart. She said she didn't know if he was following her or not." N.T. Trial, 4/24-26/23, at 132. Appellant requested that the court grant a mistrial.

The Commonwealth reiterated its position that this evidence did not constitute Rule 404(b) evidence and argued that "it's not shocking or prejudicial for the jury to hear that [C.M.] is seeing a man who lives in her community in places where the community goes." ***Id.*** at 133. The

---

[4] The Commonwealth also presented the testimony of other witnesses whose testimony is not relevant to the issues raised on appeal. Appellant's wife and daughter, M.F., testified on Appellant's behalf.

Commonwealth also stressed that the inclusion of C.M.'s statement in the video was not intentional because, even though it "scoured" the video, it "did not know it was in there." *Id.* at 134.

The court denied Appellant's motion for a mistrial, finding that this statement was a minor detail and was "not enough to warrant a mistrial." *Id.* at 135. The court noted that "[t]here's a lot of information here. I don't know that this is something [the jury] is going to recall when they go out to deliberate, and I'm not quite sure it makes any difference in their evaluation." *Id.* The court offered to provide a cautionary instruction to the jury; Appellant neither accepted nor declined the court's offer.

The Commonwealth also presented the testimony of Pennsylvania State Police ("PSP") Trooper Byron Margosiak and Corporal Hilary Faust. Trooper Margosiak testified that, in December 2018, after C.D. reported that Appellant had assaulted her, he spoke with Appellant at Appellant's home. According to Trooper Margosiak, Appellant told Trooper Margosiak that he arrived home on the day in question at the same time that C.D. had arrived to visit with his daughter. Appellant explained to Trooper Margosiak that he followed C.D. into his residence where she began to trip up a step leading from the mud room area to the kitchen. Trooper Margosiak testified that Appellant "stated that [C.D.] lost her balance on there and that he came up behind her and put his arms around her to keep her from falling over[.]" *Id.* at 101.

Corporal Faust provided extensive testimony regarding the general process of investigating a child abuse case, including describing how the PSP

works in conjunction with the CRC, ChildLine, and the county prosecutor. *Id.* at 209-212. She also described the investigation in the instant case. *Id.* at 210-218. She testified that, after referring C.D. and J.S. to the CRC for forensic interviews, she interviewed [J.S.'s mother] at the CRC. She then testified that her "next steps were to attempt to make contact with [Appellant and Appellant's wife]." *Id.* at 214. Corporal Faust testified that she made contact with Appellant's wife via telephone and Appellant's wife said that "her husband was not willing to come in for an interview[.]" *Id.* Appellant objected to this testimony as an inappropriate comment on Appellant's Fifth Amendment right against self-incrimination. The trial court instructed the Commonwealth to "move on," and Appellant made a motion for a mistrial. *Id.* at 217. The trial court indicated that it would discuss the motion at a break.

Corporal Faust then testified that Appellant had made an appointment to be interviewed but that he cancelled the appointment, explaining that his pipes had frozen and that he had hit his head trying to fix them. *Id.* at 215. Corporal Faust testified that she rescheduled Appellant's appointment, but Appellant again did not come in for the interview. *Id.* Appellant again objected, and the court again indicated it would discuss this matter at a break. At the break, Appellant made another motion for a mistrial arguing that "the case law is crystal clear" that this type of testimony is improper. *Id.* at 218.

The Commonwealth argued that Appellant's wife "can't invoke [Appellant's] rights." *Id.* The Commonwealth also argued that there is a difference between statements indicating that Appellant did not come in for

- 7 -

an interview and Appellant invoked his right to remain silent and refused to talk to the police, and that the case law protects the latter and not the former. The trial court acknowledged the "close call," but ultimately denied the motion for a mistrial. *Id.* at 219.

Prior to the jury's deliberations, the trial court instructed it, *inter* alia, that it may consider L.K.'s testimony "for one purpose and one purpose only, to be evaluated to establish that the events in this case that are alleged, the inappropriate touching, were not a mistake or were not accidental, okay?" *Id.* at 491.

Following its consideration of the evidence, the jury convicted Appellant of the above offenses. On September 28, 2023, the trial court held a hearing to determine whether it should classify Appellant as a sexually violent predator ("SVP") and to impose sentence. Based upon the testimony presented, the court classified Appellant as an SVP. The court then imposed a mandatory sentence of life imprisonment. Appellant did not file a post-sentence motion.

This appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following three issues for our review:

1. Whether the trial court abused its discretion in failing to grant a mistrial:

   A. When the Commonwealth introduced specifically excluded evidence—the [CRC] forensic interview with C.D.—that was ruled inadmissible by the trial judge during a pre-trial hearing?

B. [] When the Commonwealth's witnesses commented on [A]ppellant's pre-arrest silence not to speak with police?

2. Whether the [c]ourt erred in allowing the Commonwealth to present evidence of [Appellant's] prior conviction for incidents involving L.K. when the evidence was more prejudicial than probative and was impermissible Pa.R.E. 404(b) evidence[?]

Appellant's Brief at 6.

## A.

In his first two issues, Appellant challenges the trial court's denial of his two motions for a mistrial. We review a trial court's denial of a motion for mistrial for an abuse of discretion. **Commonwealth v. Bryant**, 67 A.3d 716, 728 (Pa. 2013). A mistrial is appropriate "only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." **Id.** (citation omitted).

## I.

Appellant first claims that the trial court abused its discretion in denying his motion for a mistrial after the Commonwealth violated the trial court's pretrial order by failing to redact from the CRC video and the transcript C.D.'s testimony implying that Appellant was following or stalking her after she reported his assault of her. Appellant's Brief at 24-25. Appellant asserts that this constitutes an abuse of discretion because the trial court misapplied the law pertaining to violations of motions *in limine*, which Appellant essentially argues create *per se* grounds for a mistrial. **Id.** at 25-27.

As a prefatory matter, we reject Appellant's bald argument that violations of orders granting motions *in limine* are *per se* grounds for a mistrial as that argument undermines our well-settled understanding that a trial court has discretion to grant or deny such a motion. We also observe that Appellant did not argue in his Brief that the statements that the Commonwealth inadvertently neglected to redact from the video had the "unavoidable effect [of] depriv[ing] the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." **Bryant**, 67 A.3d at 728.

Here, the trial court denied Appellant's motion for a mistrial because it reached the opposite conclusion, *i.e.*, the court "did not believe that C.D.'s brief videotaped statements about seeing Appellant in public in the community[] had the unavoidable effect of preventing the jury from weighing and rendering a true verdict when considered among the mountain of incriminating evidence against Appellant." Trial Ct. Op., 12/14/23, at 11. Following our review of the record, we discern no abuse of discretion in this conclusion. The Commonwealth presented ample other evidence of Appellant's guilt, including the testimony of each of the victims and L.K. In light of the voluminous incriminating evidence,[5] C.D.'s passing reference in the CRC video to seeing Appellant in her school, where Appellant's children were also students, and in the local Walmart, did not warrant a mistrial. This claim, thus, fails.

---

[5] We observe that Appellant did not challenge the sufficiency of the evidence in support of his numerous convictions.

## II.

In his next issue, Appellant claims that the trial court erred by not granting his motion for a mistrial after Corporal Faust twice referred to Appellant's pre-arrest silence because those references violated Appellant's right under the Fifth Amendment of the U.S. Constitution against self-incrimination.[6] Appellant's Brief at 29-36. Relying on **Commonwealth v. Molina**, 104 A.3d 430 (Pa. 2014), Appellant asserts that his conduct in not keeping either of his appointments with Corporal Faust "suggested an invocation of the right to silence." **Id.** at 32. He further contends that he also invoked his right to silence when his wife told Corporal Faust that he was not willing to be interviewed. **Id.** Appellant argues that the "only inference to be drawn from his failure to keep the appointment [with Corporal Faust] is one of substantive guilt." **Id.** at 33. Appellant concludes the Commonwealth violated his pre-arrest right to silence and that this violation was not harmless error. **Id.** at 33-37.

"[A] mere reference to pre-arrest silence does not constitute reversible error where the prosecution does not exploit the defendant's silence as a tacit admission of guilt." **Commonwealth v. Adams**, 104 A.3d 511, 512-13 (Pa. 2014) (OAJC) (citing **Commonwealth v. DiNicola**, 886 A.2d 329, 336-37 (Pa. 2005); **Commonwealth v. Whitney**, 708 A.2d 471, 478 (Pa. 1998)).

---

[6] Appellant concedes that his challenge is only to the alleged violation of his federal constitutional right against self-incrimination. Appellant's Brief at 29 n.4.

*See also Molina*, 104 A.3d at 451-53 (explaining that "the right against self-incrimination prohibits use of a defendant's pre-arrest silence as substantive evidence of guilt" and finding that the Commonwealth violated the defendant's Fifth Amendment right against self-incrimination when it emphasized the defendant's silence as "most telling," asked the defendant "why" he declined to cooperate with the detective, and then instructed the jury to "factor that in when you're making an important decision in this case[.]" )

Appellant's reliance on *Molina* is misplaced. Here, unlike in *Molina*, the Commonwealth did not use Corporal Faust's statements that Appellant declined to participate in an investigatory interview as evidence as substantive evidence of Appellant's guilt. The notes of testimony indicate that, in the course of describing her investigation of the victims' allegations, Corporal Faust merely testified that she attempted to, but was unsuccessful in, arranging interviews with Appellant. N.T. Trial at 215. The Commonwealth did not subsequently comment on his lack of participation and made no reference to it in its closing argument. *Id.* at 431-467. Corporal Faust's testimony regarding Appellant's pre-arrest failure to cooperate with her investigation, therefore, did not violate Appellant's federal constitutional right against self-incrimination.

Thus, we conclude that, because Corporal Faust's testimony did not violate Appellant's Fifth Amendment right against self-incrimination, the trial court did not abuse its discretion in denying Appellant's motion for a mistrial.

**B.**

In his final issue, Appellant challenges the trial court's admission of the evidence of his prior crimes against L.K. pursuant to Rule 404(b), which the Commonwealth proffered to demonstrate Appellant lack of mistake or accident and intent. Appellant's Brief at 37-57. The "[a]dmission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." ***Commonwealth v. Tyson***, 119 A.3d 353, 357 (Pa. Super. 2015) (*en banc*) (citation omitted). "Accordingly, a ruling admitting evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous." ***Commonwealth v. Huggins***, 68 A.3d 962, 966 (Pa. Super. 2013) (citations and internal quotation marks omitted).

Pennsylvania Rule of Evidence 404(b) prohibits evidence of a defendant's prior bad acts "to prove a person's character" or demonstrate "that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). Nevertheless, the Rule also provides that prior bad acts evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." ***Id.*** at 404(b)(2).

Thus, under Rule 404(b) evidence of prior bad acts "is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes," but "may be admissible in certain circumstances where it is

relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character." ***Tyson***, 119 A.3d at 358 (citations omitted). Specifically, such evidence is admissible "if offered for a non-propensity purpose[.]" ***Id.*** "A common scheme may be relevant to establish any element of a crime, where intent may be shown through a pattern of similar acts." ***Commonwealth v. Einhorn***, 911 A.2d 960, 967 (Pa. Super. 2006).

"When offered for a legitimate purpose, evidence of prior crimes is admissible if its probative value outweighs its potential for unfair prejudice." ***Tyson***, 119 A.3d at 358. The term "unfair prejudice" in Rule 404(b)(2) "means a tendency to suggest [a] decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." ***Commonwealth v. Dillon***, 925 A.2d 131, 141 (Pa. 2007) (citation omitted). "[W]hen examining the potential for undue prejudice, a cautionary jury instruction may ameliorate the prejudicial effect of the proffered evidence," as "[j]urors are presumed to follow the trial court's instructions." ***Tyson***, 119 A.3d at 360 (citation omitted).

To establish one of the Rule 404(b) admissibility exceptions, there must be "a close factual nexus sufficient to demonstrate the connective relevance of the prior bad acts to the crime in question." ***Commonwealth v. Sami***, 243 A.3d 991, 999 (Pa. Super. 2020) (citation and emphasis omitted).

Appellant first claims that the incident with L.K. was too remote in time with the instant incidents to be considered part of any "common plan or

scheme."[7]  Appellant's Brief at 42-49.  He also contends that the court erred in admitting L.K.'s testimony as evidence that Appellant's conduct was not the result of a mistake or accident because "lack of mistake is an appropriate exception when the defendant argues that they were not mistaken and as rebuttal evidence" and, here, Appellant did not argue that he was not mistaken.  *Id.* at 49-51.  Last, Appellant argues that L.K.'s testimony was not proper Rule 404(b) evidence of intent because "the similarities in all the cases consisted of similarities implicit in the offenses themselves and did not rise to the level of a signature crime."  *Id.* at 53.  Appellant emphasizes that C.D.'s assault occurred as she walked up stairs, J.S. was laying on a bed when Appellant hugged her and touched her breast, and S.M. was assaulted during a sleepover while under a blanket.  *Id.*  He, therefore, concludes that the "circumstances of each assault were vastly different" from each other and from the assaults of L.K.  *Id.* at 53-54.

In explaining its decision to admit the Rule 404(b) evidence of Appellant's crimes against L.K., the trial court acknowledged "the significant time lapse between the 2003 offenses and the instant offenses," but found the "remarkable similarity of all the offenses" compelling.  Trial Ct. Op. at 15. The court noted as follows:

> The victims of all the offenses, including the instant offenses and the 2003 offense, were female minors between the ages of 11 and 13; all the victims had been present in Appellant's home to visit

---

[7] We observe, however, that the trial court did not admit the evidence at issue here as evidence of a "common plan or scheme."

Appellant's children; all of the victims had their breasts fondled by Appellant; and in almost all of the incidents, the victims had their breasts fondled while Appellant was standing behind them.

*Id.* The trial court found that, "[g]iven the remarkable similarity in the circumstances between the instant offenses and Appellant's prior crimes, the probative value of the evidence far outweighed its prejudicial value despite the time lapse between the offenses." *Id.* The trial court also observed that it issued an appropriate cautionary instruction prior to the jury's deliberations.

Following our review, we discern no abuse of the trial court's discretion. As noted above, the Commonwealth may use evidence of a pattern of prior similar acts to show intent and absence of mistake or accident. Here, as set forth above, the similarity in the circumstances between the instant offenses and Appellant's assault are striking and L.K.'s testimony was highly probative. Furthermore, the trial court provided the jury with a limiting instruction explaining how the jury should consider the evidence when deliberating. N.T. Trial at 491. We presume that the jury has followed this instruction.[8] *See Tyson*, 119 A.3d at 360. Accordingly, Appellant is not entitled to relief on this claim.

---

[8] To the extent that Appellant argues that L.K.'s testimony was improper evidence of absence of mistake because Appellant never claimed that he was mistaken, we note Trooper Margosiak's testimony that, when initially questioned about his contact with C.D., Appellant asserted that he had touched C.D. in an effort to keep her from falling as she tripped on a step in his home.

**C.**

Having found each of Appellant's issues meritless, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>07/11/2024</u>